AUTO OWNERS INSURANCE
COMPANY, Plaintiff,

v.

TRAVELERS CASUALTY & SURETY
COMPANY, Defendants.

Travelers Casualty & Surety Company,
Cross–Plaintiff/Third Party
Plaintiff

v.

Auto Owners Insurance Company,
Counter–Defendant,

v.

Northbrook Property & Casualty
Company, Third–Party
Defendant,

No. 8:99–CV–920–T–23EAJ.

United States District Court,
M.D. Florida,
Tampa Division.

Sept. 12, 2002.

Michael S. Rywant, Kerry C. McGuinn, Jr., Rywant, Alvarez, Jones, Russo & Ruyton, P.A., Tampa, FL, John A. Yeager, Willingham & Cote, P.C., East Lansing, MI, for Auto–Owners Ins. Co.

Steven George Schember, Mary Li Creasy, Christian A. Peterson, Shumaker, Loop & Kendrick, Tampa, FL, for Reliance Ins. Co.

Robert L. Rocke, Raul Valles, Jr., Foley & Lardner, Tampa, FL, for Sun Contracting, Inc., Harlan R. Sunquist, Patricia Sunquist.

W. Gray Dunlap, Jr., Simmons & Dunlap, Tampa, FL, for Northbrook Property & Cas. Co.

Steven George Schember, Jaime Austrich, Shumaker, Loop & Kendrick, Tampa, FL, for Travelers Cas. and Surety Co.

## *ORDER*

MERRYDAY, District Judge.

Magistrate Judge Elizabeth A. Jenkins issued a "Report and Recommendation" (Doc. 101) concerning the motions for summary judgment filed in this action. No party objects, and the time for objecting has passed. The Court **ADOPTS** the "Report and Recommendation" (Doc. 101) and **GRANTS** the plaintiff's motion for summary judgment (Doc. 70), **DENIES** the defendant/counter plaintiff, third party plaintiff's motion for summary judgment (Doc. 71), and **GRANTS** the third party defendant's motion for summary judgment (Doc. 73). The Clerk is directed to (1) enter judgments in favor of the plaintiff

and the third party defendant, (2) terminate any pending motions, and (3) close the file.

## REPORT AND RECOMMENDATION

JENKINS, United States Magistrate Judge.

Before the court are Plaintiff's Motion for Summary Judgment (Dkt.70); Reliance Insurance Company's Motion for Summary Judgment (Dkt.71); Memorandum of Law in Support of Reliance's Motion for Summary Judgment (Dkt.72); Counterclaim Defendant Northbrook Property and Casualty Insurance Company's Motion for Summary Judgment (Dkt.73); Counterclaim Defendant Northbrook Property and Casualty Insurance Company's Memorandum of Law in Support of Its Motion for Summary Judgment (Dkt.74); Counterclaim Defendant Northbrook Property and Casualty Insurance Company's Memorandum of Law in Opposition to Reliance's Motion for Summary Judgment (Dkt.75); Defendants', Sun Contracting, Inc., Harlan R. Sunquist and Patricia R. Sunquists' Response to Plaintiff's Motion for Summary Judgment and Memorandum of Law (Dkt.76); Defendants', Sun Contracting, Inc., Harlan R. Sunquist and Patricia R. Sunquists' Response to Reliance's Motion for Summary Judgment and Memorandum of Law (Dkt.77); Memorandum of Travelers in Opposition to Auto-Owner's Motion for Summary Judgment (Dkt.78); Response Brief of Auto-Owners in Opposition to Reliance's Motion for Summary Judgment (Dkt.79); Response of Travelers in Opposition to Motion for Summary Judgment of Northbrook Property and Casualty Insurance Company (Dkt.80); and notices of filing of supplemental authority submitted by the parties (Dkts.83, 87,88).[1] Oral argument was held on June 18, 2002.

## I. PROCEDURAL BACKGROUND

This action commenced on April 19, 1999, and arises under this court's diversity jurisdiction. The complaint filed by Plaintiff, Auto Owners Insurance Company ("Auto Owners"), seeks declaratory judgment against Defendants, Reliance Insurance Company which was purchased by Travelers Casualty & Surety Co. (hereinafter referred to as "Reliance"), Sun Contracting Inc., Harlan Sunquist and Patricia Sunquist. Auto Owners seeks a determination that a settlement payment made by Reliance to non-party Wellcraft Marine ("Wellcraft") is not covered by a comprehensive general liability ("CGL") policy issued by Auto Owners to Sun Contracting, Inc. ("Sun"). Auto Owners also seeks a determination that it has no duty to indemnify or defend Sun or Harlan and Patricia Sunquist (the "Sunquists") in a lawsuit filed against them by Reliance. Auto Owners has been providing Sun and the Sunquists a defense in the lawsuit under a reservation of rights.

Reliance has filed a counterclaim against Auto Owners and a third party claim against Northbrook Property and Casualty Insurance Company ("Northbrook").[2] Northbrook also issued CGL policies to Sun. Reliance seeks a declaratory judgment that Auto Owners and Northbrook, pursuant to CGL policies issued by Auto Owners and Northbrook to Sun, are liable for Reliance's costs that it alleges it expended on behalf of Sun.[3]

---

1. This matter has been referred to the undersigned by the district court for consideration and a Report and Recommendation. *See* Local Rules 6.01(b) and 6.01(c), M.D. Fla.

2. Dkt. 60.

3. Reliance asserts a three count counterclaim/third party complaint against Auto Owners and Northbrook (Dkt.60). The first and second counts are a declaratory actions against Auto Owners as to Reliance's standing

Auto Owners, Reliance and Northbrook have all filed motions for summary judgment asserting that there are no genuine issues of material fact in dispute.[4]

## II. FACTUAL BACKGROUND

### A. Parties

Sun is a general contractor incorporated in the state of Florida. Sun's principals are Harlan and Patricia Sunquist. Auto Owners is an insurance company incorporated in the state of Michigan. Auto Owners issued CGL policies to Sun for liability coverage from April 16, 1991, through April 16, 1996.[5] Northbrook is an insurance company incorporated in Illinois. Northbrook issued CGL policies to Sun from January 15, 1984, through April 1, 1991.[6] Reliance is a surety company which issued performance and payment bonds to Sun.

### B. The Underlying Litigation

### 1. The Wellcraft Litigation

In the course of its business, Sun entered into a contract for the construction of, among other things, a so-called "lay-up facility" at the Sarasota, Florida boat manufacturing facility of Denmar Industries, Inc. d/b/a Wellcraft Marine ("Wellcraft").

Part of the Wellcraft contract required the installation of an underground galvanized piping system to convey acetone. Sun, as contractor and principal, and Reliance, as surety, issued performance and payment bonds to Wellcraft. Also, as part of the construction contract, Sun agreed to indemnify Wellcraft for any property damage or personal injury arising out of the construction.

The performance bond issued to Wellcraft was a standard "AIA Document A311" bond and it incorporated by reference the construction contract between Sun and Wellcraft by which Sun was to build the lay-up facility and ancillary structures. The bond provides that when the obligee declares the principal to be in default, the surety has the obligation to complete the contract or pay the cost of completion.[7]

Sun entered into subcontracts with Aqua Service, Inc. ("Aqua") and Aqua Plumbing Services Inc. ("Aqua Services") for the installation of the underground galvanized piping system in the lay-up facility. After completion of the Wellcraft contract by Sun in 1984, it was determined in February 1991 that the pipe system installed by Aqua and Aqua Services leaked.

---

as a first party claimant and third party claimant on the insurance policies issued by Auto Owners to Sun in relation to the "Wellcraft Litigation" discussed *infra*. The third count is a declaratory action against Northbrook in relation to both the "Wellcraft Litigation" and the "Pinellas Litigation" discussed *infra*.

4. However, this assertion by the movants is premised on the court accepting the parties' competing interpretations of the case law. Northbrook, in its response to Reliance's motion for summary judgment alleges that should this court accept Reliance's interpretation of the case law, there exists triable issues of material fact related to the settlement between Reliance and Wellcraft (Dkt.75).

5. See Reliance's responses to Auto Owners' Initial Request for Admissions, Request and Response 1, attached as Exhibit I to Auto Owner's motion for summary judgment.

6. Northbrook identifies the policies issued to Sun by policy number, effective date and type in its memorandum of law in support of its motion for summary judgment (Dkt.74, pp. 5–6).

7. A copy of the Performance bond is attached as Exhibit D to Auto Owners' motion for summary judgment. A copy of the construction contract has not been filed, but Reliance has cited an indemnification provision in the contract.

Wellcraft stopped the source of contamination in February 1991.[8] The leaking line was abandoned and Wellcraft began using an overhead line that was not installed by Sun to transfer the acetone into the lay-up building.[9]

The State of Florida Department of Environmental Protection ("FDEP") commenced an administrative action against Wellcraft in 1993 which resulted in the entry of a consent order for environmental cleanup. The consent order provided that Wellcraft discovered the leak in the underground acetone line on February 21, 1991, the line was abandoned, and Wellcraft began using an overhead line to transfer the acetone into the lay-up building.[10]

In February 1995, Wellcraft filed a civil action in Manatee County Circuit Court against Sun, the Sunquists, Reliance, Aqua, and Aqua Plumbing for damages related to the acetone leak, including property damages: *Genmar Industries, Inc. d/b/a Wellcraft Marine v. Sun Contracting, Inc., et. al.*, case no. CA95–2731 (the "Wellcraft Litigation"). That suit included a claim by Wellcraft against Reliance on the performance bond.

On June 3, 1998, Reliance and Wellcraft entered into an agreement for the settlement of all claims asserted by Wellcraft against Reliance in the Wellcraft Litigation. Under the terms of the settlement agreement, Reliance paid Wellcraft $50,000 in full and final settlement of all claims between Reliance and Wellcraft. Reliance alleges that it also incurred attorney's fees in the amount of $177,889.20 and costs of $19,292.67 in defending the Wellcraft litigation.[11] Reliance did not obtain a release of Sun's liability to Wellcraft.[12] Wellcraft's claim against Sun was later settled by liability payments made by Auto Owners and Northbrook.[13] Wellcraft also settled with Aqua, Aqua Services and their surety.

### 2. The Pinellas Litigation

Sun also entered into a contract for the construction of three facilities for the City of Pinellas Park, Florida (the "Pinellas Contract"). Sun, as principal and general contractor, and Reliance, as surety, issued a public construction bond to the City of Pinellas Park.[14]

---

**8.** See Wellcraft representative, Leroy William McDonald, Jr.'s, deposition in *Denmar v. Sun Contracting*, identified *infra*, on February 12, 1997 at 69, a portion of which is attached as Exhibit A to Auto Owners' motion for summary judgment.

**9.** McDonald dep. at 32, 159; See also deposition transcript, pp. 101–102, of Joseph Ellis, representative of Reliance, attached to Northbrook's memorandum of law in support of its motion for summary judgment as Exhibit F (Dkt.74).

**10.** Consent Order of April 24, 1995, attached as Exhibit C to Auto Owners' motion for summary judgment.

**11.** In its motion for summary judgment, Reliance, as factual support for this allegation, cites the deposition transcript of Neil Holt, a representative of Auto Owners. In Mr. Holt's

deposition, Reliance questioned him on Auto Owners' denial of Reliance's allegation in its counterclaim that it incurred the amount specified in attorneys fees and costs to defend itself in the Wellcraft litigation. Other than citing its questioning of Mr. Holt on this amount, Reliance does not provide any factual support for this allegation in the form of affidavits or even copies of attorney's bills.

**12.** Ellis dep. at 118 (Dkt. 74, Exhibit F).

**13.** A copy of this settlement agreement is attached as Exhibit G to Northbrook's memorandum of law in support of its motion for summary judgment (Dkt.74).

**14.** A copy of the bond is attached to Reliance's counterclaim as Exhibit B (Dkt.19) and to Northbrook's memorandum of law in support of its motion for summary judgment as Exhibit H (Dkt.74). No copy of the Pinellas

On March 28, 1989, Sun filed suit against the City of Pinellas Park for non-payment of the Pinellas Contract ("Pinellas Litigation"). Pinellas Park filed a counterclaim against Sun for breach of contract, negligence and breach of warranty and a claim against Reliance for payment on the Pinellas bond. Pinellas Park's claims were based upon the alleged negligence and faulty installation of a roof and stucco by Sun's subcontractors. On April 14, 1999, summary final judgment was granted in favor of Reliance.[15]

Reliance alleges in its motion for summary judgment that "Sun's faulty workmanship under the Pinellas contract caused moisture damage during the coverage period for the Northbrook policies," and "Reliance defended and obtained summary judgment in the Pinellas Litigation . . . ".[16]

As a result of the Pinellas Litigation, Reliance alleges it incurred in excess of $90,000 in attorney's fees and costs which it seeks from Northbrook. The facts of the Pinellas Litigation are not as well developed in the record as the facts of the Wellcraft Litigation.

### 3. The Indemnity Agreement Litigation

As a condition to providing bonds for Sun, Reliance required Sun, its President, Harlan R. Sunquist, individually and its Secretary, Patricia A. Sunquist, individually, (the "Sunquists") to execute a continuing agreement of indemnity ("Indemnity Agreement") on April 22, 1980, which requires Sun and the Sunquists to hold Reliance harmless and to indemnify Reliance against all claims sustained by reason of any bond.[17]

On or about July 23, 1998, Reliance filed suit in Circuit Court in and for Manatee County, Florida, against, among others, Sun and the Sunquists under the Indemnity Agreement seeking to recover its attorney's fees and costs and other expenses incurred as a result of the bonds it issued on behalf of Sun, plus the $50,000 settlement paid by Reliance to settle the Wellcraft Litigation.[18] Auto Owners provided Sun with a defense in the Indemnity Agreement Litigation under a reservation of rights. On January 25, 2000, the court in the Indemnity action entered partial Summary Judgment in favor of Reliance and against Sun and the Sunquists finding that they are liable to Reliance under the terms of the Indemnity Agreement.

### III. STANDARD OF REVIEW

Summary judgment should be entered when there is no genuine issue regarding any material fact when all the evidence is viewed in the light most favorable to the non-moving party. *See* Rule 56, Fed. R.Civ.P.; *Celotex Corp. v. Catrett,* 477 U.S.

---

construction contract has been filed. There is no allegation that the contract contains an indemnification provision similar to that in the Wellcraft construction contract.

**15.** A copy of this order is attached as exhibit C to Reliance's second amended counterclaim (Dkt. 60, Exhibit C).

**16.** In reality, the order granting final summary judgment which is attached to Reliance's counterclaim and third party complaint (Dkt.60) as Exhibit C, states that it was Sun which brought the motion for summary judgment on the bond claim and that Reliance "adopted" the motion. However, whether Reliance filed the motion for summary judgment or merely adopted it, is not a significant difference for purposes of the instant motions.

**17.** A copy of the Indemnity Agreement is attached to Auto Owners' motion for summary judgment as Exhibit E.

**18.** Reliance also sued Aqua and Aqua Services in the Indemnity Agreement Litigation (Dkt. 74 at 5).

**1258**

317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 607–09 (11th Cir.1991). A genuine issue of material fact exists when there is sufficient evidence in favor of the non-moving party for a reasonable jury to return a verdict in its favor. *See Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir.1995) (citations omitted).

## IV. DUTY TO DEFEND AND INDEMNIFY

This case essentially presents an insurance coverage dispute. Reliance claims that it incurred expenses that are covered by the CGL policies issued to Sun by Auto Owners and Northbrook. Auto Owners and Northbrook assert that there is no coverage for Reliance's claimed expenses. The parties seek a determination as to their rights and obligations pursuant to the policies.

■ Florida courts have adopted a strict rule that an insurer's duty to defend an action against its insured is determined solely by the allegations in the complaint. *See State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So.2d 1072, 1077 n. 3 (Fla. 1998); *National Union Fire Ins. v. Lenox Liquors, Inc.*, 358 So.2d 533, 535 (Fla. 1977). If a complaint contains allegations, some of which would be within the policy coverage and some of which are not, then the carrier has a duty to defend the case. *West American Ins. Co. v. Silverman*, 378 So.2d 28, 30 (Fla.App.4th DCA 1979). On the other hand, if the complaint on its face does not allege a claim that is covered by an insurance policy but "actual facts" developed in the discovery process or otherwise show that there is potential coverage under the insurance policy, the duty to defend is still not triggered. *Federal Ins. Co. v. Applestein*, 377 So.2d 229, 232 (Fla. 3rd DCA 1979). It is stated that a duty to defend is broader than the duty to indem-

nify in the sense that the insurer must defend even if the facts alleged are untrue or the legal theories unsound. *See West Am. Ins. Co. v. Silverman*, 378 So.2d 28, 30 (Fla. 4th DCA 1979).

■ In contrast, the duty to indemnify is determined by the underlying facts of the case. *See State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So.2d 1072, 1077 n. 7 (Fla.1998) citing *Hagen v. Aetna Casualty & Surety Co.*, 675 So.2d 963, 965 (Fla. 5th DCA 1996), *review denied*, 683 So.2d 483 (Fla.1996).

■ Generally, the burden is on the party seeking to recover on a policy of insurance to establish that there is coverage. *Equitable Life Assurance Soc. v. Wiggins*, 115 Fla. 136, 155 So. 327, 328 (Fla.1934). However, an insurer defending on the ground of non-coverage and relying on an exception in the policy bears the burden of establishing that the exception applies. *Phoenix Ins. Co. v. Branch*, 234 So.2d 396, 398 (Fla. 4th DCA 1970); *Liberty Mut. Ins. Co. v. Flitman*, 234 So.2d 390, 392 (Fla. 3rd DCA 1970); *Allstate Ins. Co. v. Coin–O–Mat, Inc.*, 202 So.2d 598, 599 (Fla. 1st DCA 1967).

## V. DISCUSSION

There are several threshold issues to resolve before turning to the ultimate issue of whether the damages sought by Reliance are covered under the CGL policies issued to Sun by Auto Owners and Northbrook: (1) whether Sun has released all claims against Auto Owners and Northbrook arising out of the Wellcraft Litigation; (2) whether Reliance has standing to assert its claims against Auto Owners and Northbrook; and (3) whether Auto Owners and Northbrook failed to comply with Florida Statute § 627.426 and are therefore prohibited from denying coverage.

## A. Release

■ Initially, Northbrook asserts that the insured, Sun, released it and Auto Owners from any claims arising out of the Wellcraft Litigation as a part of the settlement agreement dated August 6, 1998, between Sun and Wellcraft, and since Reliance seeks indemnification through Sun, Reliance's claims must fail.

■ The rights of a subrogated insurer are no greater than the rights of the insured in whose place it is substituted. *Blue Cross/Blue Shield United of Wisconsin v. Inverrary Hotel Corp.*, 579 So.2d 863, 864 (Fla. 4th DCA 1991).

Northbrook and Auto Owners paid over $500,000 to settle the Wellcraft Litigation on behalf of Sun. In exchange for Northbrook's and Auto Owners' agreement to fund the settlement, Sun agreed to release Northbrook and Auto Owners from any further liability related to the acetone leak at Wellcraft. The relevant terms of the settlement agreement provide:

> ... It is the specific intent of the parties that this Settlement Agreement and Mutual Release of All Claims be interpreted and construed as broadly as necessary to effectuate a complete resolution of all claims between and among Wellcraft, Sun, Aqua and their respective officers, directors, shareholders, employees, agents, attorneys, subsidiaries, affiliates and insurers ...

However, the release specifically excepts any claims by Reliance. In pertinent part, the settlement agreement also provides:

> ... insurers of Sun acknowledge that this Agreement does not include any release of claims by Reliance Insurance Company against Sun, nor release, admit or waive claims that there is or is not insurance coverage in the event of claim or suit by Reliance Insurance

Company against Sun in regards to a performance bond for the Project.

In addition, paragraph 1. of the settlement agreement provides:

> However, nothing contained herein shall preclude Sun or Aqua from asserting any claim(s) under its insurance ... including without limitation any action resulting from any claims asserted by Reliance Insurance Company in connection with the surety bond(s) issued to Sun.

This court finds that Sun did not release all claims for coverage under the Auto Owners and Northbrook CGL policies when it executed the settlement agreement in the Wellcraft Litigation. Sun expressly excluded any claims for "insurance coverage in the event of a claim or suit by Reliance Insurance Company against Sun in regards to a performance bond for the Project."

## B. Standing

■ The next threshold determination is Reliance's standing in bringing this action. Reliance is not an insured under either Auto Owners' CGL policies or Northbrook's CGL policies issued to Sun. Therefore, Reliance can claim an entitlement to coverage under the CGL policies only as a third party claimant or as an assignee or subrogee of Sun's own rights to coverage under the CGL policies. As an assignee or subrogee Reliance stands in Sun's shoes as a first party claimant. *Transamerica Insurance Co. v. Barnett Bank of Marion County, N.A.*, 540 So.2d 113, 116 (Fla.1989) citing *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962)

### 1. Assignee/Subrogee

■ At common law, a surety who performs or pays on behalf of an obligee steps into the shoes of the obligee to the extent of the performance or payment.

*Transamerica Insurance Co,* 540 So.2d at 116.

Accordingly, if Reliance, as Sun's surety, performed or paid on behalf of Sun an obligation that is covered by the policies issued by Auto Owners and Northbrook, then Reliance stands in Sun's shoes to that extent, is equitably subrogated to the rights of Sun, and is considered a first party claimant on the CGL policies.

Additionally, the Indemnity Agreement contains an assignment by Sun to Reliance of any and all of Sun's rights arising out of the Wellcraft and Pinellas contracts and gives Reliance full power of authority to make any claims on behalf of Sun arising in any manner out of such contracts.

### 2. Third Party Claimant

■ A third party may be entitled to assert a claim for coverage under an insurance policy even if the third party is not an insured after first obtaining a settlement or a verdict against the insured. Fla. Stat. § 627.4136(2).

Reliance claims that it made settlement payments and incurred attorney's fees and costs as a result of the alleged faulty construction by Sun on the Wellcraft and Pinellas Contracts and that these damages are covered under the CGL policies issued by Auto Owners and Northbrook to Sun. Reliance obtained a partial summary judgment as to liability against Sun and the Sunquists in the Indemnity Agreement Litigation.

Reliance therefore has standing as both a first party claimant and a third party claimant to assert claims for insurance coverage against Auto Owners and Northbrook.

### C. Florida Statute 627.426

■ The third threshold issue is whether Auto Owners and Northbrook can deny coverage pursuant to Fla. Stat. § 627.426 which provides that a liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless within "30 days after the liability insurer knew or should have known of a coverage defense, written notice of reservation of rights to assert a coverage defense is given *to the named insured.*" (Emphasis added).

■ Fla. Stat. § 627.426 does not apply to provide coverage where coverage otherwise does not exist simply because an insurer fails to comply with the terms of the statute. *AIU Insurance Co. v. Block Marina Investment, Inc.,* 544 So.2d 998, 999 (Fla.1989). Since both Auto Owners and Northbrook argue that the CGL policies issued to Sun do not provide coverage for the costs that Reliance seeks, this court finds Fla. Stat. § 627.246 inapplicable.

Even if Fla. Stat. § 627.246 were applicable, this court finds that Auto Owners and Northbrook have provided their insured, Sun, with notice of coverage defenses in compliance with the statute.

In its second amended counterclaim, Reliance claims that Auto Owners was placed on notice of this claim as early as January 1998 and Northbrook was put on notice of this claim as early as May 1996. Reliance also attaches to its third party claim a copy of Northbrook's May 22, 1996, letter to Sun which Reliance claims contains a "blanket list of exclusion."(Dkt.60, ¶ 200—205)

In its response to Reliance's motion for summary judgment, Auto Owners has attached numerous communications to Sun setting forth its coverage positions which date back to March 1, 1996 (Dkt. 79, Exhibit A). Based upon Auto Owners' correspondence to Sun attached in response to Reliance's motion for summary judgment and Northbrook's May 22, 1996, letter at-

tached to Reliance's third party claim, this court finds that Auto Owners and Northbrook have complied with Fla. Stat. § 627.426.

As (1) Sun has not released all of its claims against Auto Owners and Northbrook arising out of the Wellcraft Litigation; (2) Reliance has standing to bring this declaratory action; and (3) Auto Owners and Northbrook have complied with Fla. Stat. § 627.426, this court turns to whether there is coverage under the CGL policies for Reliance's asserted damages.

### D. Coverage for Construction Defects Under a CGL Policy

 Reliance asserts that it incurred costs because of defective construction by Sun in the Wellcraft and Pinellas contracts and those costs are covered under Sun's CGL policies. Defective construction is an occurrence under a CGL policy. *See State Farm Fire & Casualty Company v. CTC Development Corp.*, 720 So.2d at 1076.[19] However, CGL policies "only protect against personal injury or damages to personal property which might result from the defective workmanship. The policy does not afford coverage for the repair of the defective workmanship itself." *Auto Owners Ins. Co. v. Tripp Constr., Inc.*, 737 So.2d 600, 601 (Fla. 3rd DCA 1999).

The Florida Supreme Court in *LaMarche v. Shelby Mutual Ins. Co.*, 390 So.2d 325 (Fla.1980) held that the purpose of a CGL policy is to provide protection for personal injury or for property damage caused by the completed product, but not for the replacement and repair of the product. *LaMarche*, 390 So.2d at 326. Specifically, the Florida Supreme Court stated:

> Rather than coverage and payment for building flaws or deficiencies, the policy instead covers damages *caused* by those flaws. We agree with the explanation as stated by the Supreme Court of New Jersey in *Weedo v. Stone–E–Brick, Inc.*, 81 N.J. 233, 405 A.2d 788 (1979), in which it said:
>
> > An illustration of this fundamental point may serve to mark the boundaries between "business risks" and occurrences giving rise to insurable liability. When a craftsman applies stucco to an exterior wall of a home in a faulty manner and discoloration, peeling and chipping result, the poorly performed work will perforce have to be replaced or repaired by the tradesman *or surety*. On the other hand, should the stucco peel and fall from the wall, and thereby cause injury to the homeowner or his neighbor standing below or to a passing automobile, an occurrence of harm arises which is the proper subject of risk sharing as provided by the type of policy before us in this case.

405 A.2d at 791–92. The court in Weedo wrote an exhaustive opinion on this issue, discussing the majority and minori-

---

**19.** Reliance appears to take the *CTC* holding that defective construction is an "accident" under a CGL policy and extrapolate from it that all damages that stem from defective construction are covered under CGL policies. This is incorrect given the discussion of *LaMarche* and its progeny *infra*. As will be developed further, while damages that result from defective construction may be covered under CGL policies, the costs to repair or replace defective construction are not. In *CTC*, the damages sought were necessarily "property damage" resulting from defective construction rather than the costs to repair or replace the defective construction because the underlying plaintiffs were third parties—adjoining property owners—rather than the party for whom the contractor had built the defective or faulty construction. *CTC*, 720 So.2d at 1073.

ty views. We fully agree with its logic and reasoning.

*LaMarche* 390 So.2d at 326–327 (emphasis added).

■ *LaMarche* provides that a surety's liability and an CGL's liability are not co-extensive. While a CGL insurer is liable for personal injury or property damage that results from defective construction, a CGL insurer is not liable for the "replacement or repair of the product." *Id.* at 326. On the other hand, a surety is obligated to repair the defect. *Id.*

■ Reliance contends that *LaMarche* was decided under a former version of the CGL policy than the ones at issue in this case which it contends provide for coverage to repair or replace construction defects. Reliance submits that the Auto Owners and Northbrook policies contain (1) "products completed operations hazard" coverage that provides coverage for the repair or replacement of construction defects; and (2) the exclusion that excepts from coverage the repair or replacement of construction defects does not apply to defective work performed by subcontractors.

Reliance is correct that the Auto Owners and Northbrook CGL policies are different from the CGL policy examined in *LaMarche*.[20] However, Florida courts examining the same CGL policies issued to Sun by Auto Owners and Northbrook in this case continue to hold that CGL policies do not cover the costs to repair and/or replace defective construction. *See Aetna Cas. & Surety Co. of America v. Deluxe Systems, Inc. of Florida*, 711 So.2d 1293, 1296 (Fla. 4th DCA 1998); *Home Owners Warranty Corp. v. Hanover Insurance Co.*, 683 So.2d

527 (Fla.App.3rd DCA 1996); *Lassiter Construction Co. Inc. v. American States Insurance Co.*, 699 So.2d 768 (Fla.App.4th DCA 1997); and *United States Fire Insurance Company v. Meridian of Palm Beach Condominium Association, Inc.*, 700 So.2d 161 (Fla. 4th DCA 1997).

In *Home Owners Warranty Corp.*, the assignee of the builder argued that if the defective work is performed by a subcontractor, the costs to repair or replace the work is covered by the policy. *Home Owners*, 683 So.2d at 529. Specifically, the builder's assignee argued that the following exclusion and the exception to the exclusion provided coverage for the costs to repair defective workmanship:

1. "Property damage" to your product arising out of it or any part of it and included in the productscompleted operations hazard.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

*Home Owners*, 683 So.2d at 529–530. The *Home Owners'* court rejected the argument and stated that the subcontractor exception eliminates subcontractors from the exclusion but does not, in and of itself, create coverage, 683 So.2d at 529–530.

Similarly, in *Lassiter Construction Co., Inc. v. American States Insurance Co.*, a general contractor argued that exception (1) quoted in *Home Owners*, which is also in the Auto Owners and Northbrook policies, provides coverage for defective work performed by a subcontractor. *Lassiter*, 699 So.2d at 770. The *Lassiter* court re-

---

**20.** A copy of Auto Owners' CGL policy is attached to Auto Owners' motion for summary judgment and Reliance's memorandum of law in support of its motion for summary judgment. Reliance attaches what it calls an "example" of both the Auto Owners and

Northbrook CGL policies to its memorandum of law in support of its motion for summary judgment. Northbrook alleges that the policies it issued to Sun differ somewhat in specific terms but does not dispute that generally the policies provide the same coverage.

viewed the following language in the CGL policy:

 j. "Property damage" to: ...

 (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

 (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

 . . . . .

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products completed-operations hazard."

*Id.* at 770.

The *Lassiter* court found that the exception in exclusion (1) did not create coverage because it was the exclusion in (j) above which excludes coverage for the costs to repair or replace construction defects. *Id.* The Auto Owners and Northbrook policies also contain the exclusion that the *Lassiter* court determined excluded coverage for the costs to repair and replace defective construction.

Reliance argues that as defective work in both the Wellcraft and Pinellas contracts was performed by subcontractors, not by Sun itself, the CGL policies issued to Sun provide coverage for the costs to repair and replace the defective construction. As shown in *Home Owners* and *Lassiter, supra,* Florida courts have rejected this argument.

■ Reliance also contends that new CGL policies, like the Auto Owners and Northbrook policies, now contain "products-completed operations hazard" which provides for coverage for the costs to repair and replace defective construction. This argument was considered and rejected in *Lassiter.* There the builder argued that the exclusion in (j)(6) did not apply to "products-completed operations hazard." The court disagreed, holding that the exception for "products-completed operations hazard" does not create coverage for the cost to repair or replace defective construction. *Lassiter,* 699 So.2d at 770 citing *Tucker Construction Co. v. Michigan Mut. Ins. Co.,* 423 So.2d 525 (Fla. 5th DCA 1982).[21]

■ *LaMarche*'s holding that CGL policies provide protection for personal injury or for property damage caused by the completed product, but not for replacement and repair of the product, remains viable. *Home Owners,* 683 So.2d at 528. Accordingly, this court must reject Reliance's argument that under the new version of the CGL policy, there is coverage for both property damage as a result of defective construction and for the replacement or repair of the defective construction itself.[22] In sum, an exception to an

---

**21.** Reliance's citation to *Kidd v. Logan M. Killen, Inc.,* 640 So.2d 616 (La.Ct.App.1994)("products completed operations hazard" provides coverage for the costs to repair or replace defective construction in a CGL policy) is unpersuasive. It is contrary to *Lassiter* and *Home Owners, supra.*

**22.** Also in support of its argument, Reliance cites *Fejes v. Alaska Insurance Co., Inc.,* 984 P.2d 519 (Alaska 1999) and *Corner Construction Co. v. United States Fidelity and Guaranty Co.,* 638 N.W.2d 887 (S.D.2002) as holding that the new version of the CGL policy provides that there is coverage for both property damage that results from faulty or defective construction *and* the cost to repair or replace the faulty or defective construction. A reading of these cases reveals that the versions of the CGL policies under consideration are materially different from the Auto Owners and Northbrook CGL policies. Additionally, these cases interpret Alaska and South Dakota rath-

exclusion in a CGL policy does not create coverage. The CGL policies issued by Auto Owners and Northbrook do not provide coverage for defective workmanship under either theory advanced by Reliance.

### E. Obligations Under a Performance Bond

Thus, under Florida law a CGL insurer is liable for personal injury and property damage that results from faulty or defective construction, but the cost to repair or replace the faulty or defective construction is not covered. *LaMarche*, 390 So.2d 325. On the other hand, a surety is obligated to repair or replace the faulty or defective construction.

In the Wellcraft Litigation, Wellcraft took the position that Reliance's bond incorporated the construction contract. (Dkt.78, pp. 4) The construction contract contained a provision which obligated Sun to defend, indemnify and hold harmless Wellcraft from any and all claims for property damage and personal injury arising out of the project. (Dkt.78, pp. 4)

Reliance argues that it was also potentially liable for such personal injury or property damage because the Wellcraft contract was incorporated by reference into the performance bond (Dkt.78, pp. 4).[23]

■ The language in a performance bond must be construed in harmony with the purpose of the bond, and the purpose is to guarantee the completion of the contract upon default. *American Home Assur. v. Larkin Gen. Hosp.*, 593 So.2d 195, 197 (Fla.1992). The bond in *Larkin*, like the bonds in the Wellcraft and Pinellas construction contracts, contained a provision that in event of default, the surety is obligated to pay the costs of completion of the project less the balance of the contract price including "other costs and damages." *Id.* at 197. The owner in *Larkin* argued that the "other costs and damages" language in the bond enlarged the surety's obligation to pay both the costs to complete the project and delay damages. *Id.* The *Larkin* court held that the language in the performance bond, together with the purpose of the bond, clearly explains that the performance bond merely guaranteed the completion of the construction contract and nothing more and thus refused to enlarge a surety's liability under a bond. *Id.* at 198. The court, therefore, found that the liability of surety under a performance bond is not co-extensive that of the principal—the general contractor. *Id.*

The Florida Supreme Court revisited the issue of a surety's liability pursuant to a performance bond in *Federal Ins. Co. v. Southwest Florida Retirement Center, Inc.*, 707 So.2d 1119 (Fla.1998). In *Southwest Florida Retirement Center*, the issue before the court was when the five year statute of limitations in Fla. Stat. § 95.11(2)(b) begins to run. The owner in *Southwest Florida Retirement Center* sued the surety on the performance bond for latent defects discovered ten years after construction was complete. *Id.* at 1121. The owner argued that since the construction contract was incorporated into the bond, the surety's liability became co-extensive with that of the general contractor

---

er than Florida law. Accordingly, this court finds these cases are neither binding nor persuasive.

**23.** The bond in the Pinellas contract also incorporates the underlying construction contract. (Dkt. 74, Exhibit H). However, while the court has been provided a copy of the Pinellas Bond, the parties have not submitted a copy of the construction contract. Nor does Reliance allege that the Pinellas contract contains an indemnification provision similar to the indemnification provision in the Wellcraft construction contract.

and a timely claim against the general contractor would result in a valid claim against the surety's bond. *Id.* at 1120. The court disagreed. Fla. Stat. § 95.11(2)(b) provides for a five years is the statute of limitations on contractual actions and does not contain a tolling period that provides that the limitations period does not begin to run until "discovery." *Id.* The Florida Supreme Court held that the statute of limitations begins to run for performance bonds on the date of acceptance of the project rather than on the discovery of the defects. *Id.* at 1121. To that extent, the Florida Supreme Court rejected the owner's argument that a surety's liability is co-extensive with the general contractor based on incorporation of the general contract into the performance bond.

The parties have not cited, and this court has not found, any cases interpreting Florida law addressing whether the incorporation of the construction contract into a performance bond obligates a surety for expenses that are not considered to be expenses traditionally allocated to a surety pursuant to a performance bond and accordingly enlarges a surety's liability under a bond.

 Therefore, this court must return to *Larkin*'s instruction about the obligation of a surety pursuant to a performance bond. The language in the performance bond, construed together with the purpose of the bond, govern a surety's obligations under the bond. *Larkin*, 593 So.2d at 197.

A holding that the incorporation provision may enlarge a surety's obligation under a bond, for both costs to complete a project and for damages that result from the project, would seem contrary to *Larkin*.[24] However, for the purpose of considering the remaining issues presented, the court will accept Reliance's argument that the obligations of a surety, pursuant to a performance bond, and those of a CGL insurer may overlap for personal injury or property damage that result from defective or faulty construction if the performance bond incorporates the construction agreement. Accepting Reliance's contention, there are other obstacles to Reliance's theory that it is entitled to be indemnified by Sun's CGL insurers.

### F. Trigger of Coverage

 In order to have coverage under a CGL policy, there must not only be a covered loss, but the loss must also occur within the policy period. The CGL policies provide that "[t]his insurance applies to 'bodily injury' or 'property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and (2) The 'bodily injury' or 'property damage' occurs during the policy period." Therefore, it is the bodily injury or property damage that must occur during the policy period in order for there to be coverage; and "occurrence" need not take place during the policy period.

The potential for coverage is triggered when an "occurrence" results in "property damage." There is no requirement that the damages be "manifest" during the poli-

---

24. *But see St. Paul Fire & Marine Ins. Co. v. Woolley/Sweeney Hotel*, 545 So.2d 958 (Fla. 4th DCA 1989)(surety was bound to participate in arbitration where performance bond incorporated construction contract that contained a mandatory arbitration provision). However, the incorporation of an arbitration provision arguably does not enlarge a surety's obligation and merely requires that the parties procedurally adjudicate the alleged breach of the construction contract and claim pursuant to the bond through arbitration rather than a lawsuit.

cy period. Rather, it is the damage itself which must occur during the policy period for coverage to be effective. *Trizec Properties, Inc. v. Biltmore Const. Co.*, 767 F.2d 810, 813 (11th Cir.1985).

There are four trigger of coverage theories that are generally accepted: (1) exposure; (2) manifestation; (3) continuous trigger; and (4) injury in fact. *In re Celotex Corp.*, 196 B.R. 973, 1000 n. 187 (Bkrtcy.M.D.Fla.1996)(citations omitted).[25] Under the exposure theory, property damage occurs upon installation of the defective product. *Id.* Under the manifestation theory, property damage occurs at the time damage manifests itself or is discovered. *Id.* The continuous trigger approach defines property damage as occurring continuously from time of installation *until the time of discovery*. *Id.* (emphasis supplied). And injury-in-fact (which is also referred to as damage-in-fact), coverage is triggered when the property damage underlying the claim actually occurs. *Id.*

Florida courts follow the general rule that the time of occurrence within the meaning of an "occurrence" policy is the time at which the injury first manifests itself. *American Motorists Insurance Co. v. Southern Security Life Insurance Co.*, 80 F.Supp.2d 1280, 1284 (M.D.Ala.2000) citing *Travelers Insurance Co. v. C.J. Gayfer's & Co.*, 366 So.2d 1199 (Fla. 1st DCA 1979). In *American Motorists*, insureds sought coverage of claims that they had made negligent misrepresentations of underlying plaintiffs and therefore caused underlying plaintiffs mental anguish. *Id.* at 1281. The plaintiffs in the underlying action alleged that they suffered and continued to suffer mental anguish as a result of the insureds' misrepresentations. *Id.* The liability policy was issued after the alleged misrepresentations had been discovered by the plaintiffs in the underlying action. *Id.* at 1282. The insureds argued that since the plaintiffs in the underlying action alleged continued mental anguish, coverage was triggered by that continued mental anguish. *Id.* at 1284. The district court in the Middle District of Alabama held that the insureds' position was inconsistent with the current state of the law in Florida where the trigger for coverage under a liability policy is when the injury manifests. *Id.*

Accordingly, this court finds that the "trigger" for coverage for the CGL policies is when the damage occurs and if damage is continuously occurring, the "trigger" is the time the damage "manifests" itself or is discovered.

## VI. ANALYSIS

### A. Indemnity Agreement Litigation

In its complaint regarding the Indemnity Agreement Litigation, Auto Owners requests a determination that it has no duty to defend Sun and the Sunquists. However, Auto Owners' motion for summary judgment requests a determination on whether it has both a duty to defend and a duty to indemnify Sun and the Sunquists in the Indemnity Agreement Litigation (Dkt.70, pp. 20).

In order for the duty to defend to arise, the allegations contained within

---

**25.** *In re Celotex Corp.* examined the trigger of coverage issue applying Illinois state law and is therefore distinguishable from the instant case. In this general discussion, it borrows from numerous opinions from all levels, both state and federal, including *Commercial Union Insurance Co. v. Sepco Corp.*, 765 F.2d 1543 (11th Cir.1985) which applies Florida law. *In re Celotex Corp.* also discusses the trigger of coverage with respect to asbestos cases and is therefore distinguishable from the instant case on that basis as well. However, this court finds the general discussion on trigger of coverage instructive.

the four corners of the complaint in the underlying action must set forth a cause of action that seeks recovery for the type of damages that are covered by the insurance policy in question. *Auto Owners Ins. Co. v. Tripp Construction, Inc.*, 737 So.2d at 601 citing *Home Owners Warranty Corp. v. Hanover Ins. Co.*, 683 So.2d 527.

The complaint in the Indemnity Agreement Litigation filed by Reliance against Sun and the Sunquists (attached as Exhibit H to Auto Owners' motion for summary judgment) reveals that Reliance seeks indemnity from Sun and the Sunquists pursuant to the Indemnity Agreement and based upon Reliance's common law right to indemnity. Reliance alleges it incurred expenses as a result of the bonds it issued for Sun and is therefore entitled to indemnification pursuant to Florida common law and the Indemnity Agreement. However, Reliance does not allege what the expenses represented in the Indemnity Agreement complaint. Specifically, the complaint does not contain any allegations that Reliance seeks damages for property damage or personal injury as a result of defective construction.

As the complaint must set forth a cause of action that seeks recovery for the type of damages that are covered by the CGL policy and it does not, this court finds that Auto Owners does not have a duty to defend Sun and the Sunquist in the Indemnity Agreement Litigation.

■ It is said that the duty to defend is broader than the duty to indemnify. *See Silverman*, 378 So.2d at 30. Yet arguably, the duty to indemnify, which is determined by reviewing the underlying facts in this case, may exist where the duty to defend does not. Even if this court examines the underlying facts (which necessarily involve an analysis of the Wellcraft Litigation), the court still finds that Auto Owners has no duty to indemnify Sun and the Sunquists in the Indemnity Agreement Litigation for Reliance's expenses incurred in the Wellcraft Litigation. This is so because the "trigger" for coverage for any damages as a result of the construction of the Wellcraft lay-up facility is February 1991; therefore Auto Owners' policies are not implicated.

There are several possible triggers for coverage for the damages sought as a result of the Wellcraft Litigation. The underground acetone piping was completed and installed in 1984. Reliance asserts that it is "undisputed that the leak commenced some time prior to February 21, 1991, the date it was allegedly discovered."[26] (Dkt.78, p. 13) Reliance also claims that after the discovery of the leak, damage continued to occur because the acetone in the ground was spreading. Reliance asserts that the "property damage" was "the ongoing expansion ... of the acetone 'plume' which contaminated new property, not previously contaminated, on a gradual basis." (Dkt.78) Yet Reliance concedes that those damages are pollution expenses which are not covered under Reliance's bond. Instead, the "property damages" that Reliance claims (which it also claims are covered under the CGL policies) are the "costs to shut down the Wellcraft facility and dig up the floor of the facility to remove and replace the leaky pipe." (Dkt. 78 at 16)

The insured in *American Motorists* also made the continuous trigger argument: that if the third party claims that the damage is ongoing or continued, the liability policy continues to be "triggered."

---

**26.** At oral argument, the other parties agreed to this date for purposes of the summary judgment motions (Dkt. 95 at 63).

*American Motorists,* 80 F.Supp.2d at 1284. The *American Motorists* court rejected that argument and found that the current state of the law in Florida is that the trigger for coverage is when the injury manifests. *Id.* citing *Travelers Ins. Co. v. C.J. Gayfer's & Co.,* 366 So.2d 1199, 1202 (Fla.App.1st DCA 1979) and *Aetna Ins. Co. v. State Farm Fire & Cas. Co.,* 457 So.2d 512, 513 (Fla. 1st DCA 1984).

This court is unconvinced by Reliance's argument and finds that the trigger for coverage was when the leaking pipe was discovered. Even if damages continued to occur as the acetone plume continued to expand, those damages are related to pollution which is excluded under the CGL policies and which Reliance admits are not covered under the performance bond issued to Wellcraft. The "property damage" that Reliance is liable for under the performance bond, by Reliance's own admission, are the costs to shut down the facility, dig up the leaking pipe, replace it and re-place the floor of the facility. The leak in the pipe which gave rise to those damages occurred sometime prior to February 21, 1991, when it was discovered. In fact, Reliance also concedes that the damage to the pipe occurred prior to Auto Owner's coverage. Reliance states, "[s]ince the damage to the pipe probably

did take place before Auto Owners' coverage, this cost is more likely recoverable from Northbrook, and Reliance is not claiming the cost to replace the leaking pipe from Auto Owners." (Dkt.78, pp. 15–16).

This court finds that potential coverage with respect to the Wellcraft Litigation was last triggered on February 21, 1991; therefore Auto Owners' CGL policies issued to Sun are not implicated.[27]

Accordingly, examining both the Indemnity Agreement complaint filed against Sun and the Sunquists as well as the underlying facts giving rise to the Indemnity Agreement Litigation (Reliance's expenses incurred related to the Wellcraft Litigation), this court finds that Auto Owners has no duty to defend or indemnify Sun and the Sunquists in the Indemnity Agreement Litigation.[28] This court also finds that there is no coverage for the expenses incurred by Reliance related to the Wellcraft Litigation under the Auto Owners policy because coverage, if any exists, was "triggered" in February 1991 before Auto Owners issued Sun a CGL policy. **Summary judgment in favor of Auto Owners on its complaint and against Reliance on counts I and II of its counterclaim is therefore recommended.[29]**

27. Northbrook argues that Reliance did not suffer any damages until Sun denied its obligations under the Indemnity Agreement which was sometime after December 21, 1995, when Reliance sent Sun a demand letter. That argument misconstrues the CGL policies. The policies are "triggered" when "property damage" occurs for which an insured may be liable. Property damage "occurred" or was manifested when Wellcraft discovered the acetone leak on February 21, 1991.

28. To the extent that Reliance seeks indemnification from Sun and the Sunquists in the Indemnity Agreement Litigation for expenses incurred in the Pinellas Litigation, the court also finds that those "underlying facts" dem-

onstrate that Auto Owners has no duty to indemnify Sun or the Sunquists for those expenses incurred by Reliance. The Pinellas Litigation commenced in 1989, therefore, claims for any property damage or personal injury as a result of any defective construction had to have been discovered sometime prior to 1989 before Auto Owners issued its first CGL policy to Sun. This court has not been presented with any facts that indicate otherwise.

29. Sun, the Sunquists and Northbrook do not seek a declaration as to whether Northbrook has a duty to defend or indemnify Sun or the Sunquists in the Indemnity Agreement Litigation. Accordingly, this court does not decide that issue.

## B. The Wellcraft Litigation

While Auto Owners' policies were not "triggered" by the underlying facts in the Wellcraft Litigation, Northbrook's CGL policies were "triggered."

A pivotal factual issue is what the settlement payment by Reliance to Wellcraft represented. The CGL insurers argue that Reliance's payment in the Wellcraft Litigation was as a volunteer because: (1) the leaking pipe was never replaced;[30] and (2) Reliance had an absolute statute of limitations defense. Joseph Ellis, Reliance's representative, testified that the $50,000 payment was made as a "business decision"; he did not specify that the payment was due to any existing liability. Ellis stated that it would have cost more than $50,000 to continue the litigation.[31]

In *Federal Ins. Co. v. Southwest Florida Retirement Center, Inc.*, 707 So.2d 1119 (Fla.1998), the Florida Supreme Court held that the five-year statute of limitations accrues, as to a surety, at the time of the acceptance of the construction, latent defect or not. *Id.* at 1121. This case was decided on February 12, 1998, and rehearing was denied on April 2, 1998. *Id.* at 1119. The settlement agreement between Reliance and Wellcraft was entered into on June 3, 1998. Reliance was aware of the *Southwest Florida Retirement Center* decision when it entered into settlement with Wellcraft.[32]

The Wellcraft facility was completed in 1984. Wellcraft filed suit against Reliance in 1995. At the time of settlement, Reliance had no legal liability under the performance bond; its $50,000 settlement payment to Wellcraft was as a "volunteer."

When a surety cannot present sufficient proof that it was obligated to pay under the bond, it cannot recover on the bond. *Wright v. Fidelity and Casualty Co. Of New York*, 139 So.2d 913, 915 (Fla. App.3rd DCA 1962). In *Wright*, a surety sought reimbursement from its contractor after having paid to cure construction defects. The court held that the surety must establish that it was obligated to cure, under the performance bond, or else risk payment as a volunteer:

> Before the Surety can recover, it would have to establish as a matter of law that it was obligated under the terms of its performance bond to pay out the money expended by it in curing the alleged defects which occurred in the construction of the swimming pool. If it was not so obligated under the terms of its bond, then any sums expended by it for that purpose would have been as a mere volunteer for which liability could not be imposed either on the contractor or on the indemnitors under the terms of the indemnity agreement given by them.

*Id.* at 915.

Accordingly, Reliance's only basis for seeking indemnification from Sun, Northbrooks' insured, for this "voluntary" payment is the Indemnity Agreement. However, this liability is not covered by Northbrook's CGL policy because it excludes from coverage contracted for liability. Northbrook's CGL policy excludes from coverage " 'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or

---

**30.** A surety is obligated under a performance bond to complete the construction according to the construction contract or *to pay the costs to complete the construction. Larkin*, 593 So.2d at 198 (emphasis added).

**31.** Ellis dep. at 119–120.

**32.** Ellis dep. at 118–119.

agreement."[33] Nor may Reliance assert a common law right to indemnity.[34]

■ Assuming arguendo that Reliance's $50,000 settlement payment to Wellcraft was to pay a legal obligation, this payment represented Reliance's obligation to pay the costs to "repair and replace defective construction" and that liability is not also covered under Northbrook's CGL policies.

In its motion for summary judgment and memoranda of law in opposition to Northbrook and Auto Owners' motions for summary judgment, as well as at oral argument, Reliance asserted that its $50,000 payment to Wellcraft was to pay its liability for the costs to shut down the facility, dig up the leaking pipe and re-construct the floors (Dkt. 79, pp. 16, Dkt 95 at 25).[35] Reliance argues that the majority of these costs are damages to other property and not costs to "repair or replace defective construction." Reliance further submits that the only cost that can be termed "repair or replacement of defective construction" is the replacement of the leaking pipe, a nominal expense.

The record is devoid of evidence of how much it would have cost to repair or to replace galvanized pipe.[36] Most importantly, the pipe was never replaced; instead, Wellcraft began using above ground pipes for the conveyance of acetone. The record also does not reveal the costs of the above ground piping system. Furthermore, since the payment made by Reliance to Wellcraft was in settlement rather than after an adjudication of liability, this court is left with only Reliance's counsel's assertions about what liability Reliance paid when it settled with Wellcraft.

■ The proper measure of damages of a claim for construction defects is the cost of correcting the defects including the costs to make the building conform to the specification of the contract. *See e.g. Temple Beth Sholom and Jewish Center, Inc. v. Thyne Construction Corp.,* 399 So.2d 525, 526 (Fla. 2nd DCA 1981) (citations omitted). In *Temple Beth Sholom,* the owner sued both the builder and the builder's surety for defective construction. 399 So.2d at 525–26.

The costs to repair the leaking pipe at Wellcraft would necessarily include the costs to dig up the facility and replace the floor once the pipe was repaired or replaced—part of the original construction. Therefore, this court finds that the liability Reliance alleges it was paying pursuant to the performance bond—the cost to dig up the facility, repair or replace the pipe and once the pipe is replaced or repaired, reconstruct the floors—is liability to correct

**33.** Reliance also appears to concede that the contract liability exclusion in the CGL policies exclude from coverage any damages that Sun is obligated to pay under the Indemnity Agreement if the only basis for this obligation is the Indemnity Agreement. (Dkt. 78 at 8).

**34.** *Wright* provides that where a surety cannot demonstrate that it made a payment for which it was obligated on a performance bond, it cannot collect that payment from the contractor pursuant to both the contractual indemnity agreement in that case and the surety's common law right to indemnity. *Wright,* 139 So.2d at 915. A common law right to indemnity exists because the law implies a promise on the part of the principal to indemnify his surety. *Scott v. National City Bank of Tampa,* 107 Fla. 810, 139 So. 367, 370 (1931).

**35.** At oral argument, Reliance's counsel stated that "we were settling . . . a claim for what we thought was our exposure for property damage under the bond." (Dkt. 95 at 28).

**36.** On the cost of replacement, at oral argument counsel for Reliance argued that it was nominal—"ten bucks." (Dkt. 95 at 26)

the defect (the leaking pipe) and not liability for damages as a result of the defect.[37]

Additionally, the record does not reveal that there were any other property damages or personal injury as a result of the leaking pipe, other than the costs to clean up the pollution.[38] However, even if there were other damages as a result of the leaking pipe, this court finds that Reliance is bound by its admission that the settlement payment to Wellcraft was to settle its liability for the costs to dig up the pipe and replace the floor after repairing and replacing the leaking pipe. Accordingly, the damages that Reliance paid in settlement to Wellcraft were damages for the repair or replacement of defective construction and are not covered under Northbrook's CGL policy.

Finally, Reliance appears to argue that if it is potentially liable for some damages that are not covered by Northbrook's CGL policy and for some damages that are covered and it settled all of its potential liability, Northbrook should be required to indemnify it pursuant to the CGL policy. There is a dearth of authority for such a proposition. Northbrook cannot be required to indemnify Reliance—which is not an insured under the CGL policy—for damages that *may* be covered by the CGL policy issued to Sun when there is a basis for Reliance's liability that is not covered by the CGL policy. This is true especially in light of the fact that Northbrook provided Sun with a defense in the Wellcraft Litigation, paid a large settlement to Wellcraft on behalf of Sun, and the liability that Reliance stated it settled is not covered.[39]

**Accordingly, this court recommends that summary judgment be granted in**

37. Reliance argues that the costs to dig up the pipe and re-construct the lay up facility after replacing the pipe are "damages" to other property and should be covered by the CGL insurer. In support, Reliance cites *Bundy Tubing Co. v. Royal Indemnity Co.*, 298 F.2d 151 (6th Cir.1962). In *Bundy*, a manufacturer of steel tubing that was used by contractors and plumbers for radiant heating, was sued on theories of negligence and breach of warranty for damages to property sustained by reason of the tubing allegedly being defective. *Id.* at 152. The principle damage claimed in the cases was the cost of removal of the concrete flooring in which the defective tubing had been embedded and the laying on new concrete in which to place the new tubing. *Id.* at 153.

The insurer argued that the old concrete had not been damaged in any accident, and therefore the costs to dig up the old concrete and lay new concrete with the new tubing were not covered. *Id.* at 153. The Sixth Circuit found that the property was "damaged by the installation of defective tubing," the failure of the tubing was an 'accident' within the meaning of the liability policy and, that the only the cost of new tubing to replace the defective tubing was excluded from coverage under the policy. *Id.* Therefore, the costs of

removing the defective tubing and the cost of installing new tubing was found recoverable under the liability policies. *Id.* at 154.

*Bundy* is distinguishable from this case because the insured in *Bundy* was the tubing manufacturer and not the general contractor. Thus, the Sixth Circuit was not presented with the same factual situation addressed in *LaMarche*. Interpreting a CGL policy to cover replacement and repair of defective construction would "enable a contractor to receive initial payment for the work from the homeowner, then receive subsequent payment from his insurance company to repair or correct the deficiencies in his work." *LaMarche*, 390 So.2d at 326.

38. Northbrook's policies also exclude from coverage damage as a result of pollution. Reliance asserts that, pursuant to the bond, it too is not responsible for pollution damages and it does not seek reimbursement for any pollution damages (Dkt. 72 at 19).

39. Since Reliance is not entitled to indemnification from Northbrook for the settlement payment it made to Wellcraft, Reliance is similarly not entitled to reimbursement of its attorney's fees and costs expended in the Wellcraft Litigation.

favor of Northbrook and against Reliance as to the attorney's fees and costs (including the settlement payment) incurred by Reliance in the Wellcraft Litigation.

### C. Pinellas Litigation

█ Like the performance bond in the Wellcraft Litigation, the Pinellas bond also incorporates by reference the underlying construction contract. (Dkt. 74, Exhibit H). However, while the court has been provided a copy of the Pinellas Bond, the parties have not filed a copy of the construction contract and there is no evidence that the construction contract includes a provision requiring Sun to indemnify the City of Pinellas Park for any personal injury or property damage that results from the construction.

Therefore, Reliance's claim for indemnification from Northbrook for its expenses incurred in the Pinellas Litigation is even more tenuous than its claim for indemnification for the expenses incurred in the Wellcraft Litigation.

Assuming arguendo that the bond incorporated the contract between Sun and the City of Pinellas Park, and further assuming that it had a provision requiring Sun to indemnify the City of Pinellas Park for any personal injury or property damage arising out of the construction, Reliance is still not entitled to prevail.

With respect to the Pinellas Litigation, there was no settlement paid to the City of Pinellas Park or adjudication that Reliance was liable on the bond for any damages to property *resulting* from defective construction. In fact, summary judgment was granted in favor of Reliance on the City of Pinellas Park's bond claim. In its third party claim against Northbrook, Reliance alleges that construction defects performed by Sun and its subcontractors were alleged in the Pinellas Litigation and that through discovery, it determined that the City of Pinellas Park not only claimed damages to repair or replace the defective construction but also damage to other property as a result of the defective construction. (Dkt.60, ¶ 171).

Reliance has not presented the court with any evidence to support its allegations that it paid or even defended claims for property damage as a result of alleged defective construction. Had claims for defective construction been proven in the Pinellas Litigation, Reliance would have been obligated pursuant to the bond to correct the alleged defective construction. Like the liability to repair or replace the leaky pipe in the Wellcraft Litigation, that liability is not covered by Northbrook's CGL policy issued to Sun.

Reliance prevailed on the bond claim in this litigation. Northbrook has no duty to indemnify Reliance for its expenses in defending the Pinellas Litigation.

**Accordingly, summary judgment should be granted in favor of Northbrook and against Reliance as to Reliance's expenses incurred in the Pinellas Litigation.**

### D. Sun's Argument

Sun and the Sunquists argue that they have no duty to indemnify Reliance, but, to the extent this court finds that they have a duty to indemnify Reliance, Auto Owners' policy covers those damages. (Dkt.76, pp. 2). There is no cause of action in this litigation alleging that Sun and the Sunquists have a duty to indemnify Reliance. More importantly, this issue has been resolved against Sun and the Sunquists in the Indemnity Agreement Litigation. Furthermore, as to whether Auto Owners has an obligation to indemnify Sun or the Sunquists, this court has found that Auto Owners does not have a duty to defend or

indemnify Sun or the Sunquists in the Indemnity Agreement Litigation.

█ Sun argues that if it is required to indemnify Reliance for Reliance's payment to Wellcraft and Reliance's attorney's fees and costs incurred in the Wellcraft Litigation, Auto Owners and Northbrook are precluded from asserting that there is no insurance coverage under the policies. *Wollard v. Lloyds and Companies of Lloyd's,* 439 So.2d 217, 218 (Fla.1983)(an insurer's settlement of a case in which the insurer disputes coverage is the functional equivalent to a confession of judgment or verdict in favor of the insured).

█ Wellcraft sued Sun and Reliance in the Wellcraft Litigation on separate theories. Wellcraft's claim against Reliance was pursuant to the performance bond. Under *Larkin,* a surety's obligations on a performance bond are not co-extensive with the principal's liability. Under *Wollard,* Auto Owners and Northbrook, by their settlement on behalf of Sun of the Wellcraft Litigation, are precluded from denying coverage to Sun on those claims asserted against it by Wellcraft. However, Auto Owners and Northbrook are not precluded from denying coverage to Sun of any claims asserted against it by Reliance.

## VII. CONCLUSION

This court concludes that the damages sought by Reliance are not covered by the CGL policies issued by Auto Owners and Northbrook to Sun. The parties have presented argument on issues not discussed in this report and recommendation, including: whether Reliance's damages are economic loss rather than property damage; and whether the attorney's fees and costs sought by Reliance are "damages" covered by CGL policies. This court need not reach these issues. No triable issues of fact remain for determination.

Accordingly, this court recommends that summary judgment be granted in favor of Auto Owners and against Sun, the Sunquists and Reliance on Auto Owners' complaint and summary judgment should be granted in favor of Auto Owners and Northbrook on Reliance counterclaim/third party complaint.

Accordingly, upon due consideration, it is hereby **RECOMMENDED** that:

(1) Plaintiff's motion for summary judgment (Dkt.70) be **GRANTED;**

(2) Defendant/Counter Plaintiff, Third Party Plaintiff's motion for summary judgment (Dkt.71) be **DENIED;** and

(3) Third Party Defendant's motion for summary judgment (Dkt.73) be **GRANTED.**

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. *See* 28 U.S.C. 636(b)(1).