Lynette MATOUSEK, Special Administratrix and/or Administratrix of the Estate of Robert James Matousek, Deceased; and in her own behalf, Appellant,

v.

**SOUTH DAKOTA FARM BUREAU MUTUAL INSURANCE COMPANY, Appellee.**

No. 16701.

Supreme Court of South Dakota.

Considered on Briefs Nov. 30, 1989.

Decided Jan. 3, 1990.

J.M. Grossenburg of Day & Grossenburg, Winner, for appellant.

Ronald J. Wheeler of Wheeler Law Office, Huron, for appellee.

PER CURIAM.

## ACTION

Lynette Matousek appeals a summary judgment in favor of South Dakota Farm Bureau Mutual Insurance Company (insurer) in her lawsuit on behalf of the estate of Robert Matousek for supplemental death benefits under an automobile insurance policy. We affirm.

## FACTS

Robert Matousek was employed as a semi-truck driver and, at the time of his death, lived with his wife Lynette in Colome, South Dakota. In December 1986 Robert purchased a Chrysler automobile and contacted Darrel Pochop (Pochop), an agent for insurer, requesting that he compute the premium for full insurance coverage on the Chrysler. The two met on December 20 and, during the course of their meeting, Pochop offered Robert supplemental "accidental death benefit" coverage in the amount of $10,000. This offering was made in accordance with the requirements of SDCL 58–23–7 and SDCL 58–23–8.[1] It is clear that Pochop never explained the exclusions and limitations on the coverage to Robert inasmuch as Pochop testified that he himself was not fully aware of the exclusions until after Robert's death.

Robert agreed to purchase the insurance policy from Pochop along with the supplemental death benefit coverage. Pochop and Robert began the process of completing Robert's application for the insurance with an effective date of December 20, 1986. It became necessary for Robert to leave and Pochop completed the application in Robert's absence. Lynette stopped by Pochop's office later in the day, paid the premium and signed the application. The application contained no information on the exclusions or limitations relating to the supplemental "death coverage" requested on the form.

Four days later, on December 24, 1986, Robert was killed while driving his truck from Hot Springs, South Dakota, back to his home. After Robert's death, Pochop advised insurer that he had transmitted an application for insurance for Robert and that Robert had been killed in a truck accident. Insurer's claims manager later phoned Pochop and informed him that insurer would not pay Lynette's claim because Robert's death occurred while he was driving his truck and that was one of the limitations in the policy.

No insurance policy relative to Robert's application for insurance was issued to Robert or Lynette prior to Robert's death. Lynette denies ever receiving a copy of the policy. Pochop claims that he delivered a

---

1. SDCL 58–23–7 provides:

    No application for an automobile liability policy may be taken with respect to any automobile registered or principally garaged in this state unless the supplemental coverages set forth in § 58–23–8 are offered to the named insured who shall have the right to reject in writing all or any one or more of such coverages.

    SDCL 58–23–8 provides in pertinent part:

    Supplemental insurance coverages shall as a minimum include:

    (1) accidental death benefits of at least ten thousand dollars payable upon the loss of life of the named insured which shall result directly from and independently of all other causes from bodily injury, other than sickness or disease or death resulting therefrom, caused by accident sustained by the named insured while occupying an automobile, or entering or alighting therefrom, or through being struck by a motor vehicle while a pedestrian, if death occurs within ninety days of the accident. . . .

copy of the policy to her sometime in May 1987 and testified that the policy was late because of changes Lynette had made in the policy after Robert's death.

Lynette ultimately brought the present action against insurer seeking the $10,000 death benefit coverage Robert purchased in December 1986 plus damages for mental distress, punitive damages and attorney's fees. Summary judgment was granted for insurer based upon the policy exclusions on the death benefit coverage. Lynette appeals.

### ISSUE

#### WHETHER THE TRIAL COURT ERRED IN GRANTING INSURER SUMMARY JUDGMENT?

#### DECISION

The standards for reviewing a summary judgment are well established and will not be substantially repeated. Generally, a summary judgment will be affirmed if there are no genuine issues of material fact and the legal questions have been correctly decided. *Bego v. Gordon,* 407 N.W.2d 801 (S.D.1987).

The material facts of this matter are relatively undisputed. Particularly, no issue is raised over the fact that Robert's December 20, 1986, application for insurance constituted a "binder" of insurance. Thus, this court's decision turns on the legal propriety of the trial court's application of the terms of the insurance policy purchased by Robert to the binder of insurance he procured prior to his death.

Lynette's sole argument on appeal is that the binder provided for "death coverage" without exclusions and that insurer could not retroactively limit that coverage by a policy issued after Robert's death. Accordingly, she contends that the trial court erred in granting insurer summary judgment. We disagree.

The general principles on the coverage afforded an insured by an insurance binder are outlined in 12A J.A. Appleman & J. Appleman, Insurance Law and Practice § 7232 (1981):

> The terms and provisions which control in the construction of the coverage afforded by a binder are those contained in the ordinary form of policy usually issued by the company at that time upon similar risks. The binder is subject to the conditions of the policy contemplated, *though such policy may never issue.* The standard form of contract in use by the insurer at that time may be referred to, to ascertain the coverage.... *And where the parties have previously contracted upon similar policies, those conditions, limitations, and exclusions will be enforced though not mentioned in the preliminary conversations leading to the issuance of the contract.* (footnotes omitted). (emphasis added).

Similar principles have been endorsed by courts in a number of jurisdictions. *See e.g. Alabama Farm Bureau Mutual Cas. Ins. Co. v. Adams,* 289 Ala. 304, 267 So.2d 151 (1972); *National Emblem Insurance Co. v. Rios,* 275 Cal.App.2d 70, 79 Cal.Rptr. 583 (1969); *Howell v. U.S. Fire Ins. Co.,* 185 Ga.App. 154, 363 S.E.2d 560 (1987); *State Automobile Mutual Insurance Co. v. Babcock,* 54 Mich.App. 194, 220 N.W.2d 717 (1974); *Pape v. Mid–America Preferred Ins. Co.,* 738 S.W.2d 882 (Mo.Ct. App.1987); *First Protection Life Ins. Co. v. Compton,* 230 Va. 166, 335 S.E.2d 262 (1985).

These principles are codified in South Dakota in SDCL 58–11–29:

> Binders or other contracts for temporary insurance may be made orally or in writing, *and shall be deemed to include all the usual terms of the policy as to which the binder was given* together with such applicable endorsements as are designated in the binder, except as superseded by the clear and express terms of the binder. (emphasis added).[2]

**2.** Although Lynette cites *Hilt Truck Lines v. Riggins,* 756 F.2d 676 (8th Cir.1985) as support for her contention concerning retroactive application of the terms of an insurance policy to a binder of insurance, that case is distinguishable from the present action. In *Hilt,* the appeals court declined to apply an Arkansas statute identical to SDCL 58–11–29 so as to extend policy exclusions to a binder of insurance because the record contained no showing concerning the

Two questions are raised in applying the foregoing principles to the instant case: first, what were the usual terms of insurer's policy relative to the supplemental death benefit coverage purchased by Robert, and, second, did the clear and express terms of the binder supersede the usual terms of the policy?

As to insurer's usual policy terms concerning supplemental death benefit coverage, the record establishes that in March 1986 Robert had purchased a similar policy of insurance from insurer which expired in October 1986. The following pertinent terms on death benefit coverage were contained in the endorsements to that policy:

## II. Accidental Death Benefit—Supplementary Coverage.

The following Insuring Agreement IX is added:

"**IX. Accidental Death Benefit.** To pay the accidental death benefit stated herein in the event of the death of any named insured which shall result directly from and independently of all other causes from bodily injury (other than sickness or disease or death resulting therefrom),· caused by accident and sustained by such named insured while occupying an automobile, or entering or alighting therefrom, or through being struck by a motor vehicle while a pedestrian, if death occurs within 90 days of the accident.

**Limit of Liability.** The limit of liability for this Accidental Death benefit is $10,000 for each named insured.

**Exclusions.** *This Insuring Agreement IX does not apply to bodily injury or death:*

(a) *sustained in the course of his occupation by any person while engaged* (1) *in duties incident to the operation,* loading or unloading *of,* or as an assistant on, *a* public or *livery conveyance or commercial automobile* or trailer, or (2) in duties incident to the repair or servicing of any automobile or trailer. . . .

\* \* \* \* \* \*

usual terms of the policy relative to the loss sustained by the insured. As will be more thor-

## IV. Definitions.

‚"**Automobile**". With respect to any insurance afforded under the Accidental Death Benefit or Total Disability Benefit of this endorsement, the word *"automobile" means a four-wheel private passenger motor vehicle* designed for use upon public roads and owned by a natural person, including trailers designed for use with such motor vehicles, but does not include a motorcycle with a side car attached thereto. (emphasis added).

The record also contains a sample copy of one of insurer's automobile insurance policies. The endorsements to that policy pertaining to supplemental death benefit coverage contain exclusions and definitions identical to those quoted above.

Finally, SDCL 58–23–6(1) defines the term "automobile" for purposes of supplemental death benefit coverage:

As used in §§ 58–23–6 to 58–23–8, inclusive, unless the context otherwise requires:

(1) "Automobile" means a four-wheel passenger motor vehicle designed for use upon public roads and owned by a natural person, including trailers designed for use with such motor vehicles, but does not include a motorcycle or a motorcycle with a sidecar attached thereto.

Robert's prior insurance policy with insurer, the insurer's sample automobile insurance policy containing the supplementary coverage endorsements, and the fact that certain definitions in the policy concerning supplementary coverage parallel state statutory language all lead to the conclusion that the policy definitions and exclusions insurer seeks to apply in this instance are standard and "usual terms of the policy". Since these terms exclude coverage for death sustained in the course of operation of a livery conveyance or commercial automobile or a vehicle which is not a "four wheel passenger motor vehicle," we find that there was no error by the trial court in concluding that Robert's accident

oughly discussed, the evidentiary record is not so silent in the instant case.

was not covered by the supplemental death coverage in the insurance binder he procured in December 1986. Moreover, there is no express language in the binder which "clearly and expressly" supersedes the usual terms of the policy. Accordingly, there was no error by the trial court in granting insurer summary judgment.

Affirmed.