# United States Court of Appeals
### FOR THE EIGHTH CIRCUIT

_____

No. 97-1480
No. 97-1599
_____

Liberty Mutual Insurance Company,     *
         *
    Appellee/Cross-Appellant,     *
         *
    v.     *
         *
FAG Bearings Corporation,     *
         *
    Appellant/Cross-Appellee.     *

_____          Appeals from the United
                    States District Court for
No. 97-2844          the Western District of
_____          Missouri.

Liberty Mutual Insurance Company,     *
         *
    Appellee,     *
         *
    v.     *
         *
FAG Bearings Corporation,     *
         *
    Appellant.     *

_____

Submitted:  February 11, 1998
Filed:  September 8, 1998

_____

-1-

_____

Before McMILLIAN and HANSEN, Circuit Judges, and DAVIS,[*] District Judge.
_____

DAVIS, District Judge

Appellee/Cross-Appellant Liberty Mutual Insurance Company ("Liberty") filed this declaratory judgment action to determine its contractual obligations to defend and indemnify Appellant/Cross-Appellee FAG Bearings Corp. ("FAG") for damages arising out of an alleged environmental contamination and cleanup. The district court[**] granted summary judgment to Liberty in part, ordering that there is no duty of indemnification; granted summary judgment to FAG in part, finding that Liberty had a duty to defend FAG until the issue of indemnification was resolved; and denied Liberty a right to reimbursement of defense costs incurred to date. The court further denied FAG's subsequent Fed. R. Civ. P. 60(b) motion, based on newly discovered evidence.

Both parties appeal portions of the district court's order as follows: FAG appeals (1) the grant of summary judgment to Liberty on its obligation to indemnify FAG; (2) the denial of FAG's cross-motion for partial summary judgment on Liberty's continuing defense obligations; and (3) the denial of FAG's Fed. R. Civ. Pro. 60(b) motion. Liberty, on the other hand, cross-appeals the district court's order to the extent that it concluded that Liberty had a duty to defend FAG and denied reimbursement to Liberty of defense costs paid. For reasons discussed below, we affirm.

_____

[*]The HONORABLE MICHAEL J. DAVIS, United States District Judge for the District of Minnesota, sitting by designation.

[**]The Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri.

# I. BACKGROUND

FAG is named as a defendant in four lawsuits brought by individuals who reside near FAG's plant in Joplin, Missouri. The plaintiffs in those suits allege that FAG is responsible for contaminating their water supply with the solvent trichloroethylene ("TCE"). Specifically, they allege that the contamination has caused their property values to decrease, has affected their use and enjoyment of property, and has caused or may cause bodily injury. Only one of those actions, collectively referred to as the Moretz action[1], is currently before this Court. FAG has agreed to a settlement in this action, but the three others are still pending against FAG.

FAG has operated a ball bearing parts manufacturing plant in Joplin, Missouri since 1970. In about 1972 or 1973, the plant installed a degreasing system which sprayed newly manufactured balls with TCE to remove grease and waste oil from the balls as they moved down a conveyor belt. Because TCE evaporates quickly, the system created a significant amount of TCE vapor. To prevent escape of the vapor, FAG used a TCE reclamation device referred to as the vapor recovery system, which separated water, oil and other substances from the TCE so that pure TCE could be reused.

The system was designed to be a contained, closed-loop process, from which no TCE vapor could escape into the surrounding environment. However, due to recurring mechanical and electrical malfunctions, significant amounts of TCE vapor escaped from the system. A common malfunction caused a vent in the machinery to be left open, allowing TCE vapor to escape into the atmosphere. Employees could see the TCE vapor leak into the atmosphere and the system required repair every

---

[1]The Moretz action was originally captioned as Thomas, et al. v. FAG Bearings Corp..

one or two weeks. As early as 1973, FAG was aware that large amounts of TCE were escaping from the system. In 1973 alone, FAG estimated that 40 tons of TCE vapor escaped through the vent as a result of malfunctions in the vapor recovery system, creating the need to replace large quantities of TCE in the system. Yet, FAG continued using TCE until 1981 or 1982.

Beginning in 1982, Liberty insured FAG through a series of Comprehensive General Liability and Excess Liability insurance policies. The policies issued in 1982, 1983 and 1984 generally provide as follows:

> [Liberty] shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false, or fraudulent.

(Joint App. 158). The policies limited FAG's coverage with a pollution-exclusion clause as follows:

> This policy does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

Id. With respect to covered claims of "personal injury or advertising injury," the policies similarly obligate Liberty as follows:

> [to] pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies...

(Joint App. 163). The policies define "personal injury" as follows:

> Injury arising out of one or more of the following offenses committed during the policy period... (2) wrongful entry or eviction or other invasion of the right of private occupancy.

(Joint App. 164).

The claims in the four actions against FAG include violations of the Comprehensive Environmental Cleanup Recovery Act ("CERCLA") and the Resource Conservation Recovery Act ("RECRA"), as well as claims for trespass, nuisance, negligence and strict liability. In April 1995, Liberty moved for summary judgment on its duty to defend and indemnify FAG. FAG filed a cross-motion for summary judgment on Liberty's duty to defend. The district court granted summary judgment to Liberty in part, finding that Liberty was not obligated to indemnify FAG due to application of the policy's pollution exclusion clause. The district court further granted summary judgment in part to FAG, finding that Liberty had a duty to defend FAG until the issue of indemnification was resolved and subsequently denying Liberty a right to reimbursement of defense costs incurred to date. The district court also denied FAG's Fed. R. Civ. P. 60(b) motion, based on newly discovered evidence.

## II. DISCUSSION

This court reviews a grant of summary judgment *de novo*. Thus, summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Hill v. St. Louis University, 123 F.3d 1114, 1118-19 (8th Cir. 1997); Duffy v. Wolle, 123 F.3d 1026, 1033 (8th Cir. 1997).

## A. Liberty's duty to indemnify FAG

The district court held that Liberty was not obligated to indemnify FAG, on grounds that the pollution from the vapor recovery system was not "sudden and accidental" and therefore the exception to the pollution exclusion clause did not apply. Rather, the court concluded that because FAG repaired the system frequently yet did not take the necessary steps to prevent the system from malfunctioning, FAG's actions in regards to the pollution were deliberate and the releases were foreseeable and expected. (Appellant's App. at 7A-11A).

First, FAG disputes factual findings by the district court that the only releases that could have caused the TCE pollution were the airborne releases from the vapor recovery system and that such releases were not "sudden and accidental". FAG argues that there were numerous allegations of other sources of TCE pollution which could constitute "sudden and accidental" sources of pollution if proven. Liberty counters that witnesses below identified the vent leaks as the only source of pollution and that the possibility of other sources were raised as mere allegations without any evidentiary support.

On a motion for summary judgment, the nonmoving party cannot rest on mere allegations and instead must set forth specific facts showing that there is a genuine issue for trial. Webb v. Lawrence County, 144 F.3d 1131, 1135 (8th Cir. 1998). Furthermore, a district court's findings of fact are reviewed under a "clearly erroneous" standard. Fed. R. Civ. Pro. 52(a). Such findings must be upheld if they "fall within a broad range of permissible conclusions." Federal Deposit Ins. Corp. v. Lee, 988 F.2d 838, 841 (8th Cir. 1993) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 400 (1990)). Contrary to FAG's assertion, requiring FAG to put forth facts to support its allegations is not an unfair shifting of any burden on FAG. Rather, that is the standard applied against every non-movant in a summary

judgment motion. FAG has failed to set forth any facts to support its allegations that there were other releases of TCE pollution that could have caused the contamination at issue and were "sudden and accidental". Therefore, we conclude that it was not clearly erroneous for the district court to conclude that the only source of TCE pollution were the airborne releases from the vapor recovery system.

FAG next challenges the district court's interpretation of the meaning of the terms "sudden and accidental." Specifically, FAG argues that such terms can be interpreted to mean "unexpected" and "unintentional". Thus, FAG contends that because each occurrence of malfunction in the vapor recovery system was unexpected and the release of TCE was unintended, the TCE pollution was "sudden and accidental."

In determining that the TCE pollution was not sudden and accidental, the district court relied on Aetna Cas. & Sur. Co. v. General Dynamics Corp., 968 F.2d 707 (8th Cir. 1992) for interpretation of those terms. In that case, an insurer brought an action against its insured with respect to underlying claims against the insured arising from environmental contamination. At the district court level, the term "sudden" in the "sudden and accidental" exception to the insurer's pollution exclusion was held to be ambiguous, creating a material issue as to whether the insured's regular hazardous waste disposal practices fit within the exception.

On appeal, this Court rejected the district court's holding that a "sudden" discharge can include events occurring over a long period of time, as long as the resulting damage is unexpected. Rather, this Court held that "sudden and accidental" is unambiguous under Missouri law and that the insured's frequent and knowing polluting activities were neither sudden nor accidental. Consequently, the pollution exclusion applied, and there was no duty to indemnify. The Court in General Dynamics stated that Missouri law requires all terms of an insurance contract to be given meaning and since accidental includes the unexpected, the term

sudden cannot be given a contradictory meaning that would render the term accidental meaningless. In other words, the term "sudden" must include a temporal element such that it is abrupt, immediate and unexpected.

We reject FAG's argument that General Dynamics was an incorrect prediction of Missouri law. Missouri courts have not provided any guidance as to how the terms "sudden and accidental" should be interpreted. However, numerous circuits have held that such terms are unambiguous and have interpreted those terms in a manner similar to the meaning attributed in General Dynamics - - namely, that the term "sudden" connotes an unexpected event that does not occur continuously over a significant period of time. Quaker State Minit-Lube, Inc. v. Fireman's Fun Ins. Co., 52 F.3d 1522, 1529-30 (10th Cir. 1995); Ray Indus., Inc. v. Liberty Mutual Ins. Co., 974 F.2d 754, 768 (6th Cir. 1992); Lumbermens Mut. Casualty Co. v. Belleville Indus., 938 F.2d 1423, 1427 (1st Cir. 1991).

Under the interpretation provided in General Dynamics, we affirm the district court's ruling that the TCE releases were not "sudden and accidental." Although, FAG may not have intended that such pollution occur, the district court correctly concluded that FAG did not do enough to stop the continuous recurrence of malfunction so as to prevent future releases of TCE. Because FAG was aware of the recurring malfunction, we agree that the TCE releases were not accidental.

FAG cites numerous cases which allegedly involve similar factual scenarios and where summary judgment was denied. See, Cessna Aircraft Co. v. Hartford Acc. & Indem. Co., 900 F.Supp. 1489 (D.Kan. 1995); Employers Insurance of Wausau v. Duplan Corp., 899 F.Supp. 1112 (S.D.N.Y. 1995); Nashua Corp. v. First State Insurance Co., 648 N.E.2d 1272 (Mass. 1995). Upon review of those cases, we conclude that those cases are distinguishable because unlike here, a genuine issue of material fact was presented as to whether the pollution was "sudden and accidental". In this case, there was a significant amount of evidence presented that

the vapor recovery system frequently malfunctioned and released large amounts of TCE over a long period of time. As discussed above, FAG failed to put forward sufficient evidence to create a genuine issue of material fact as to whether such releases were "sudden and accidental". Consequently, we conclude that summary judgment on that matter was appropriate.

Finally, FAG argues that the district court erred by applying the pollution exclusion clause to its claims which were allegedly personal injury claims. Pursuant to the terms of the policies at issue, Liberty is obligated to pay all sums that FAG is obligated to pay as damages because of personal injury. (Joint App. 163). However, the pollution exclusion clause states that the policy does not apply to bodily injury or property damage caused by pollution. (Joint App. 158). The underlying claims against FAG are primarily based on damage to property. Yet, the underlying claims also include claims for injury resulting from contaminated drinking water. Although such claims can be characterized as personal injury claims, FAG overlooks the fact that they are also "bodily injury" claims that are specifically excluded from coverage by the pollution exclusion clause. Therefore, we conclude that the district court correctly applied the pollution exclusion clause to the underlying claims in this case.

## B. Liberty's duty to defend FAG

In regards to Liberty's duty to defend FAG, the district court held that although Liberty had an initial duty to defend FAG, that duty expired upon the determination that the claims against FAG are excluded from coverage by operation of the pollution exclusion clause in the underlying policies. As an initial matter, FAG argues that pursuant to the district court's order, Liberty has an obligation to defend FAG in other actions brought against FAG and in the investigation by the Missouri Department of Natural Resources. However, the district court rejected such argument by FAG when FAG sought a motion to alter and amend judgment for

the purpose of confirming Liberty's duty to defend. Contrary to FAG's assertion, the district court's determination was limited to Liberty's duty to defend in the <u>Moretz</u> action alone.

On cross-appeal to this Court, Liberty argues that it had no initial duty to defend FAG and that it is entitled to reimbursement of all defense costs paid. Under Missouri law, an insurer owes no duty to defend when the insured alleges facts not within the coverage of the insurance policy. However, the duty to defend is triggered if there are facts that could potentially bring the underlying claim within coverage. Furthermore, any uncertainty as to the policy's coverage should be decided in favor of the insured. <u>Reliance Insurance Co. v. Shenandoah South, Inc.</u>, 81 F.3d 789, 791-92 (8th Cir. 1996).

The policies at issue provide that Liberty has the duty to defend any suit against FAG seeking damages caused by bodily injury or property damage. We agree that on their face, the underlying complaints in this action allege claims for bodily injury and property damage. Although the parties disputed whether the claims were excluded from coverage by operation of the pollution exclusion clause, any uncertainty as to such coverage should be resolved in FAG's favor. Therefore, Liberty remained obligated to defend FAG so long as there remained any question as to whether the underlying claims were covered by the policies. Upon determination that the pollution was not "sudden and accidental" and that the claims against FAG were therefore excluded from coverage, the district court properly concluded that Liberty's duty to defend FAG in this action expired. Because we conclude that Liberty had a duty to defend FAG until such determination was made, we reject Liberty's argument that it is entitled to reimbursement of defense costs.

## C. FAG's motion pursuant to Fed. R. Civ. Pro. 60(b)

FAG further appeals the district court's denial of its motion pursuant to Fed.

R. Civ. Pro. 60(b) on the basis of newly discovered evidence.  To prevail on a Rule 60(b) motion based on newly discovered evidence, the moving party must show:  (1) that the evidence was discovered after trial;  (2) that the party exercised due diligence to discover the evidence before the end of trial;  (3) that the evidence is material and not merely cumulative or impeaching; and (4) that a new trial considering the evidence would probably produce a different result.   McCormack v. Citibank, 100 F.3d 532, 542 (8th Cir. 1996)

A Rule 60(b) motion is committed to the sound discretion of the district court, and we review that determination only for an abuse of discretion.  Id.;  Callanan v. Runyon, 75 F.3d 1293, 1296 (8th Cir. 1996). FAG sought such a motion on the basis that it discovered new evidence suggesting potential sources of TCE contamination other than the releases from the vapor recovery system.  FAG argued that because the summary judgment order was based on the determination that the airborne releases were the only source of TCE pollution, the new evidence could fall within the "sudden and accidental" exception to the pollution exclusion clause.  The district court denied FAG's motion, concluding that FAG did not exercise due diligence to discover and report such evidence, that the new evidence was cumulative, and that such evidence would not have produced a different result.

We conclude that FAG has failed to show that it exercised due diligence to discover the new evidence before the summary judgment order was issued.  On appeal to this Court, FAG merely asserts that such new evidence was discovered in another action against FAG and was not presented to FAG until after the district court's order was issued.  However, FAG fails to show why such evidence could not have been discovered earlier with due diligence.  Therefore, we conclude that the district court's denial of FAG's Rule 60(b) motion was not an abuse of discretion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.