**UNDERWRITERS AT LLOYDS LONDON, Plaintiff,**

v.

**STD ENTERPRISES, INC., Alberto Rivera, and Maria Rivera, his wife, Defendants.**

No. 8:03–CV–1696–T–EAJ.

United States District Court, M.D. Florida, Tampa Division.

Oct. 4, 2005.

Dawn M. McMahon, Coleman & Associates, P.A., Roderick F. Coleman, Coleman & Associates, P.A., Boca Raton, FL, for Underwriters at Lloyds London, Plaintiff.

Wm. Scott Patterson, The Insurance Coverage Law Group, LLC, Baltimore, MD, for STD Enterprises, Inc., Alberto Rivera, Maria Rivera wife of Alberto Rivera, Defendants.

Raymond T. Elligett, Jr., Schropp, Buell & Elligett, P.A., Tampa, FL, Pro se.

## ORDER

JENKINS, United States Magistrate Judge.

Pending before the court are **Plaintiff's Motion for Summary Judgment** (Dkt.103) and **Defendant STD Enterprises, Inc.'s Third Motion for Summary Judgment** (Dkt.106).[1] The undersigned has reviewed the filings in this case, applicable statutes, and the relevant caselaw in evaluating the parties' arguments.

## I. Background

The following facts are undisputed. Defendants Alberto and Maria Rivera filed a complaint in state court seeking damages from Defendant STD Enterprises, Inc. ("STD") arising from an auto accident. (Dkt. 1 at 74, Exhibit B). The Riveras alleged that on April 24, 2001, Alberto Rivera was driving a tractor-trailer owned by Defendant STD. (*Id.*) This trailer was insured by Plaintiff Underwriters at Lloyds London ("Underwriters"). (Dkt. 1 at 5). The Riveras alleged that the brakes on the trailer failed, causing the vehicle to flip over, and resulted in bodily injury to Mr. Rivera. (Dkt. 1 at 74–75, Exhibit B).[2] When the Riveras initiated the state court action, Underwriters undertook the defense of STD pursuant to auto liability policy number LBA01497 ("the Policy"). (Dkt. 1 at 2).

Underwriters filed the present action in federal court on August 11, 2003. (Dkt.1). Underwriters requests a declaratory judgment that it does not have a duty to defend or indemnify STD in the state court action. STD filed a counterclaim for a declaratory judgment that Underwriters does have a duty to defend STD in state court. (Dkt.8). This court has jurisdiction pursuant to 28 U.S.C. § 1332.

■ Underwriters asserts that it does not have a duty to defend or indemnify STD because the Riveras' state court action falls under a cross-liability exclusion contained in Endorsement LSI94–6 of the Policy. A cross-liability exclusion eliminates coverage for claims or suits brought by one insured against another insured covered under the Policy.[3] Underwriters argues that the cross-liability exclusion applies here because both STD and Alberto Rivera qualify as insureds under the policy. An "insured" under the Policy includes "any other person who is an approved driver identified on the Scheduled Driver Endorsement for any business use of a covered auto." (Dkt. 1 at 42).

STD argues that the cross-liability exclusion does not apply because: (1) the Riveras do not allege in the state court complaint that Alberto Rivera was engaged in the business use of a covered auto, and therefore Alberto Rivera is not an insured under the Policy; and (2) the exclusion did not become effective until

---

1. Plaintiff previously filed an identical motion for summary (Dkt.99), but did not include attachments with that filing. The later motion for summary judgment, which includes attachments, supplants the earlier filing.

2. Maria Rivera, Alberto Rivera's wife, seeks damages for loss of consortium. (Dkt. 1 at 75).

3. The cross-liability exclusion contained in Endorsement LSI94–6 of the Policy states, in relevant part:
 This Endorsement changes the Certificate issued. Please read it carefully!
 This insurance *does not* apply to liability arising from claims or suits brought by:
 1. One insured against another insured that is provided coverage as an insured under this Certificate.
 (Dkt. 1 at 57).

STD received a written copy of the policy with the endorsements well after the April 24, 2001 accident.[4] The parties do not dispute that the binder that Underwriters issued on April 1, 2001 did not contain written reference to the cross-liability exclusion. The binder contains the statement, "Exclusions/Amendments as per quote." (Dkt. 107 at 10).

## II. Summary Judgment Standard

Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir.1995). At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In considering a motion for summary judgment, the court views all evidence in the light most favorable to the party opposing the motion. *Harris v. H & W Contracting Co.*, 102 F.3d 516, 519 (11th Cir.1996). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. If the movant meets this burden, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exists. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir.1993). Summary judgment is appropriate here because, as the parties point out, there are no genuine issues of material fact. (Dkt. 103 at 2; Dkt. 106 at 1).

## III. Underwriters' Duty to Defend

 Under Florida law, a court may issue a declaratory judgment as to an insurer's duty to defend and duty to indemnify.[5] *Higgins v. State Farm Fire & Casualty Co.*, 894 So.2d 5, 9 (Fla.2004). Florida courts have held that an insurer's duty to defend arises when a complaint filed against an insured alleges facts within the scope of the policy's coverage. *Trizec Properties, Inc. v. Biltmore Construction Co.*, 767 F.2d 810, 811 (11th Cir.1985) (citing *Tropical Park, Inc. v. United States Fidelity & Guaranty Co.*, 357 So.2d 253, 256 (Fla. 3rd DCA 1978)). Florida has adopted a strict rule that the insurer's duty to defend is based solely on the allegations in the complaint. *Lime Tree Village Community Club Ass'n, Inc. v. State Farm General Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir.1993); *Auto Owners Ins. Co. v. Travelers Casualty & Surety Co.*, 227 F.Supp.2d 1248, 1258 (M.D.Fla.2002).[6] The allegations in the complaint are controlling even if other testimony indicates

---

4. A written policy containing the endorsement was not drawn up until June 28, 2001. (Dkt. 94 at unnumbered 6).

5. Because this court has jurisdiction over the matter based on diverse citizenship of the parties, the court applies the substantive law of the forum in which it sits. *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties agree that Florida law applies to the present action.

6. *Accord State Farm Fire & Casualty Co. v. CTC Dev. Corp.*, 720 So.2d 1072, 1077 n. 3 (Fla.1998); *National Union Fire Ins. v. Lenox Liquors, Inc.*, 358 So.2d 533, 535 (Fla.1977); *State Farm Fire & Casualty Co. v. Edgecumbe*, 471 So.2d 209, 210 (Fla. 1st DCA 1985); *State Farm Mutual Automobile Ins. Co. v. Universal Atlas Cement Co.*, 406 So.2d 1184, 1188 (Fla. 1st DCA 1982).

that the actual facts are different from those alleged. *State Farm Fire & Casualty Co. v. Edgecumbe*, 471 So.2d 209, 210 (Fla. 1st DCA 1985).

■ The insurer's duty to defend exists "even if the facts alleged are untrue or the legal theories unsound." *Auto Owners Ins. Co.*, 227 F.Supp.2d at 1258 (citing *West Am. Ins. Co. v. Silverman*, 378 So.2d 28, 30 (Fla. 4th DCA 1979)). The duty to defend arises "even though ultimately there may be no liability on the part of the insured." *Trizec Properties*, 767 F.2d at 811. If the allegations in the complaint create potential coverage under the policy, this is sufficient to trigger the insurer's duty to defend. *See id.* at 812 (citing *Tropical Park*, 357 So.2d at 256). Doubts as to whether a duty to defend exists are resolved in favor of the insured, and exclusionary clauses in insurance contracts are to be construed liberally in favor of the insured. *Id.; Tropical Park*, 357 So.2d at 256 (citing *George v. Stone*, 260 So.2d 259 (Fla. 4th DCA 1972)).

The court thus considers the parties' arguments about Underwriters' duty to defend in light of the allegations in the state court complaint. Underwriters argues that the Policy's cross-liability exclusion precludes coverage if one insured sues another insured. Underwriters maintains that both STD and Alberto Rivera (Defendant and Plaintiff in the state suit, respectively) qualify as insureds under the policy. Underwriters issued the Policy to STD; therefore STD is an insured. To show that Alberto Rivera is also an insured, Underwriters must demonstrate that: (1) Mr. Rivera was an approved driver identified on the Scheduled Driver Endorsement, and (2) Mr. Rivera was engaged in

the business use of a covered auto. (Dkt. 1 at 42). The parties agree that Alberto Rivera was, at the time of the accident, an approved driver identified on the Scheduled Driver Endorsement. (Dkt. 94 at unnumbered 7; Dkt. 1 at 36).

Yet Underwriters does not demonstrate that, based solely on the allegations in the state court complaint, Mr. Rivera was an insured. Underwriters' showing that Mr. Rivera was driving his employer's vehicle does not establish that he was engaged in a business use of that vehicle at the time of the accident. Underwriters discusses Mr. Rivera's deposition testimony that he picked up his trailer at work on the day of the accident. (Dkt. 103 at 9). However, in determining whether Underwriters has a duty to defend STD, the court may not consider testimony outside of the complaint. *Edgecumbe*, 471 So.2d at 210. In the state court complaint, the Riveras do not allege that Alberto Rivera was engaged in the business use of a covered auto at the time of the accident. (Dkt. 1 at 74–75; Dkt. 94 at unnumbered 7). Therefore, looking only at the allegations in the complaint as Florida law dictates, Underwriters has a duty to defend STD in the state court action.

■ Underwriters argues in the alternative that even if there is a duty to defend, it should be relieved of that obligation because facts establish that the Policy provides no coverage. (Dkt. 103 at 5). In essence, Underwriters asserts that if there is no duty to indemnify STD, there is no longer a duty to defend STD. Underwriters is correct in theory: the duty to defend ceases when it is shown that there is no potential for coverage, i.e., when there is no duty to indemnify.[7] Thus the

---

7. *See, e.g., Nationwide Mut. Fire Ins. Co. v. Keen*, 658 So.2d 1101, 1102–03 (Fla. 4th DCA 1995) (insurer must defend a claim until it is certain that it is not covered); *see also Conway Chevrolet Buick, Inc. v. Travelers Indemnity Co.*, 136 F.3d 210, 214 (1st Cir.1998)

court must examine whether Underwriters has shown that there is no potential for coverage of STD under the Policy.

## IV. Underwriters' Duty to Indemnify

■ Under Florida law, an insurer's duty to indemnify is determined by analyzing the policy coverages in light of the actual facts of the underlying case. *Auto Owners Ins. Co. v. Travelers Cas. & Surety Co.*, 227 F.Supp.2d 1248, 1258 (M.D.Fla. 2002) (citing *State Farm Fire & Cas. Co. v. CTC Dev. Corp.* 720 So.2d 1072, 1077 n. 3 (Fla.1998)). Underwriters states that the cross-liability exclusion was a "usual term" of the Policy, that facts now available show that Alberto Rivera is an insured under the Policy, and therefore there is no possibility of coverage under the Policy. The court examines each assertion in turn, without being confined to the contours of the complaint as when considering the duty to defend.[8]

### A. Is the cross-liability exclusion a "usual term" of the Policy?

■ A policy exclusion may relieve an insurer of their duty to indemnify only when it is clear the exclusion applies. Under Florida law, "exclusionary clauses in insurance contracts must be construed liberally against the insurance company and in favor of the insured in order that the purpose of insurance will not be defeated." *Tropical Park*, 357 So.2d at 256. Howev-

er, "if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Hagen v. Aetna Casualty & Surety Co.*, 675 So.2d 963, 965 (Fla. 5th DCA 1996). The insurer alleging non-coverage based on an exclusion in the policy bears the burden of establishing that the exclusion applies. *See LaFarge v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir.1997); *Auto Owners Ins. Co. v. Travelers Cas. & Surety Co.*, 227 F.Supp.2d 1248, 1258 (M.D.Fla. 2002).

■ At the time of the accident in this case, the complete Policy had not been issued and only a written binder existed. Florida insurance law provides that "Binders... shall be deemed to include all the usual terms of the policy as to which the binder was given together with such applicable endorsements as are designated in the binder, except as superseded by the clear and express terms of the binder." Fla. Stat. § 627.420. Here, however, the binder does not designate any specific endorsements, and only contains the phrase "Exclusions/Amendments as per quote." (Dkt. 107 at 10). Underwriters contends that the binder includes the cross-liability exclusion because it was a "usual term" of the policy under Fla. Stat. § 627.420.

STD cites *Steuart Petroleum Company, Inc. v. Certain Underwriters at Lloyd's*

---

(insurer may withdraw from defense when a proceeding or conclusive step in the litigation excludes the possibility of coverage); *North Bank v. Cincinnati Ins. Companies*, 125 F.3d 983, 986 (6th Cir.1997) (duty to defend extends until all possible theories of recovery are eliminated); *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919, 924 (8th Cir. 1998) (insurer's duty to defend expired upon a determination that all claims were excluded from coverage); *Snug Harbor, Ltd. v. Zurich Ins.*, 968 F.2d 538, 545 (5th Cir.1992) (duty to defend ceases at the outer boundary of policy's potential coverage); *see generally* 14 Lee

R. Russ & Thomas F. Segalla, *Couch on Insurance* § 200:29 (3d ed.1999).

8. While the court may not consider evidence outside the allegations of the complaint in determining the duty to defend, *see Edgecumbe*, 471 So.2d at 210, the court may consider such evidence in evaluating the duty to indemnify. *See, e.g., Auto Owners Ins. Co.*, 227 F.Supp.2d at 1259–73 (analyzing duty to indemnify on evidence presented outside the complaint).

*London,* 696 So.2d 376, 379 (Fla. 1st DCA 1997), for the proposition that an exclusion labeled an endorsement cannot be a "usual term" of the policy. (Dkt. 107 at 13–14). However, *Steuart Petroleum* is inapposite to the instant situation as it does not deal with a policy's "usual terms" for purposes of inclusion in a binder. In *Steuart Petroleum,* two different loss provisions applied to a certain loss but gave different levels of coverage. 696 So.2d at 377. One provision in the body of the policy covered $16,000 of damage; the second, located in an endorsement, covered $768,000 worth of damage. *Id.* The court held that to the extent an endorsement is inconsistent with the body of an insurance policy, the endorsement controls. *Id.* at 379.[9] *Steuart Petroleum* simply did not consider whether an endorsement could be a "usual term" for inclusion in a binder under Fla. Stat. § 627.420.

An endorsement may be among the "usual terms" of a policy even though it is labeled as an endorsement. As the District Judge explained, "A court must look past the labels provided by the insurer and examine whether the exclusion or endorsement is a usual term of the policy or a separate endorsement." (Dkt. 47 at 6).

The court observed that theoretically "if an insurer could establish that all of its policies contained a specific exclusion under the heading of 'endorsement,' a court may find that the exclusion was a usual term of the policy." (Dkt. 47 at 6).[10]

Underwriters here offers the affidavit and deposition testimony of Peter Anderson as evidence that the endorsement was a "usual term" of the Policy. (Dkt. 103 at 6–9). Mr. Anderson testified that he is an employee of Insurance Exchange Broker's Services ("IEBS"), a subsidiary of Prime Insurance Holdings. (Dkt. 102-2 at 4). IEBS acted as broker and underwriter for "Syndicate 1245," which wrote the Policy at issue for STD. (Dkt. 102-2 at 11). Mr. Anderson stated that the Policy was delivered to STD through JLB, STD's insurance broker.[11] (Dkt. 102-3 at 17). Mr. Anderson testified that when JLB received the binder in this case, it had three prior insurance policies from IEBS in its possession, and that each of these contained a cross-liability exclusion.[12] (Dkt. 102-2 at 22, ·24). Mr. Anderson's testimony that IEBS issued three prior policies containing the cross-liability exclusion to JLB is not contested.[13]

---

9. *See also Fireman's Fund Ins. Co. v. Levine & Partners, P.A.,* 848 So.2d 1186, 1187 (Fla. 3rd DCA 2003) (the terms of an endorsement control over anything purportedly to the contrary in any other insuring agreement) (citing *Steuart Petroleum,* 696 So.2d 376).

10. On September 15, 2004, the District Judge held that Underwriters offered no evidence that the cross-liability exclusion was a "usual term" of the Policy and granted summary judgment for STD. (Dkt. 47 at 6). The District Judge later vacated this order after Underwriters sought to introduce evidence that the exclusion was a "usual term" of the Policy. (Dkt.60). Subsequently, both Underwriters and STD again filed motions for summary judgment. (Dkts. 103 & 106).

11. At several points throughout its argument, Underwriters asserts that STD was or should

have been aware of the cross-liability exclusion because STD's prior policies (with other insurance providers) contained a similar exclusion, and because STD's insurance broker knew the Policy would contain such an exclusion. (Dkt. 103 at 3, 7). Underwriters implies that a broker's awareness of a Policy term makes that term a "usual term" under the statute, but does not provide any legal support for this contention.

12. Curiously, Underwriters does not submit these prior policies, or the endorsements containing the cross-liability exclusion from these prior policies, in support of its position.

13. Mr. Anderson stated in his third affidavit that all of Underwriters' commercial-auto liability policies contain a cross-liability exclusion. (Dkt. 103-5 at 4). STD points out that

The parties have not cited, and the court has not located, any reported decisions discussing Fla. Stat. § 627.420. In one case, however, the South Dakota Supreme Court considered whether an exclusion was a "usual term" so as to be effective under a binder.[14] *Matousek v. South Dakota Farm Bureau Mut. Insur. Co.*, 450 N.W.2d 236, 239 (S.D.1990). The court examined the insurer's prior policies, a sample policy from the insurer, and the fact that the policy provision paralleled statutory language and concluded that the exclusion was a "usual term" of the insurer's policies. *Id.*

Although not binding on this court, the South Dakota Supreme Court's analysis is instructive. Here, Underwriters has submitted undisputed evidence that Underwriter's insurance broker, Mr. Anderson, included the cross-liability exclusion in the three previous policies provided to STD's insurance broker. (Dkt. 102–2 at 22, 24). Underwriters points out that the Policy here was a manuscript policy rather than a "standard ISO" policy and thus there is no standardized form against which to compare it. (Dkt. 103 at 8). Underwriters has met its burden of establishing that the cross-liability exclusion is a usual term of the policy, and that the exclusion applies in

this instance.[15] *See LaFarge*, 118 F.3d at 1516.

Finally, the court notes that "it does seem somewhat inequitable to use an exclusion in the policy to deny coverage when the policy was issued after the loss." *Gas Kwick, Inc., v. United Pacific Insur. Co.*, 58 F.3d 1536, 1540 (11th Cir.1995) (analyzing whether an exclusion could be used to deny coverage when only a binder existed at the time of the loss).[16] However, the Eleventh Circuit recognized that by not applying policy exclusions during the time between the issuance of the binder and the delivery of the policy, insurers would in effect be providing blanket coverage during this period. *Id.* The Eleventh Circuit refused to impose such a rule and this court is bound by that decision. *Id.* (holding that the exclusion applied under the binder to exclude coverage).

Underwriters has produced undisputed evidence that the cross-liability exclusion was a usual term of the policies issued by its broker to STD's insurance broker. Thus the binder in effect at the time of the accident is deemed to include the exclusion. *See* Fla. Stat. § 627.420. To show that the cross-liability exclusion applies in this case, Underwriters must next estab-

at his deposition, Mr. Anderson testified that he had "no idea" if other brokers working with Syndicate 1245 included cross-liability exclusions in their policies. (Dkt. 102–2 at 25). This testimony does not create a genuine issue of material fact to whether this exclusion was a "usual term" of the Policy. Although Mr. Anderson did not know whether other brokers include this term in their policies, STD does not offer any evidence that other brokers omit it. The existence of slight factual disputes will not defeat an otherwise properly supported motion for summary judgment. *Liberty Lobby*, 477 U.S. at 247–48, 106 S.Ct. 2505.

14. The Court analyzed the binder under statutory language identical to Fla. Stat.

§ 627.420. The South Dakota statute states, in relevant part:

> "Binders ... shall be deemed to include all the usual terms of the policy as to which the binder was given together with such applicable endorsements as are designated in the binder, except as superseded by the clear and express terms of the binder."

S.D. Codified Laws § 58–11–29.

15. The term "usual" means customary or "expected based on previous experience." *Black's Law Dictionary* 1579 (Bryan A. Garner ed., 8th ed.2004).

16. In *Gas Kwick*, the parties did not dispute that the relevant exclusion was part of the binder. *Id.* at 1540.

lish that Alberto Rivera was an insured under the Policy.

### B. Is Alberto Rivera an insured under the Policy?

▇▇▇ As discussed above, to demonstrate that Alberto Rivera is an insured Underwriters must show that: (1) Mr. Rivera was an approved driver identified on the Scheduled Driver Endorsement, and (2) Mr. Rivera was engaged in the business use of a covered auto. (Dkt. 1 at 42). The parties agree that Alberto Rivera was, at the time of the accident, an approved driver identified on the Scheduled Driver Endorsement. (Dkt. 94 at unnumbered 7; Dkt. 1 at 36). The parties do not contest the fact that Mr. Rivera was driving a covered auto.

Underwriters highlights several portions of Mr. Rivera's deposition to show that he was engaged in the business use of a covered auto at the time of the accident. (Dkt. 103 at 9). Mr. Rivera testified, "The trailer that I was renting had problems, so they [mechanics at Rivera's place of employment] took it off so they could work on it. So I left the truck with the key, so they could change the trailer." (Dkt. 44 at Deposition pp. 10–11). Rivera continued, "[W]hen I left early that morning with the truck, they had changed the trailer." (*Id.* at 11). Rivera later stated, "I left early in the morning. I never paid attention as far as the number of the trailer, but since all the trailers are the same, I left with the trailer. And I filled it up, and barely leaving maybe just some seven, eight miles, I went to apply the brakes, and the trailer didn't brake." (*Id.* at 12). From

Mr. Rivera's deposition testimony, the implication is clear that Mr. Rivera went to STD [17] in the morning, the mechanics changed his trailer, he left STD, filled his trailer with a load for delivery, and was in the process of driving it to its destination when the accident occurred. STD does not offer any evidence contradicting Mr. Rivera's testimony,[18] therefore none of the facts presented in his testimony are disputed. Based on this testimony, Mr. Rivera was engaged in the business use of a covered auto.

As Alberto Rivera was listed as an approved driver on the Scheduled Driver Endorsement and was engaged in the business use of a covered auto at the time of the accident, Mr. Rivera qualifies as an insured under the Policy. Since Underwriters has established that Mr. Rivera was an insured under the Policy, the Riveras' complaint in state court involves one insured under the Policy (Alberto Rivera) bringing claims against another insured under the Policy (STD). In such a situation, the cross-liability exclusion, as one of the usual terms of the policy included in the binder, eliminates any possibility of coverage by Underwriters.

### V. Reimbursement of Defense Costs

Finally, Underwriters seeks again to recover fees and costs it incurred in defending STD in the state court litigation. (Dkt. 103 at 11). Underwriters previously requested and was denied an award of these fees and costs. (Dkt. 87 at 7). Under Florida law, an insurer is not entitled to reimbursement of attorney's fees and

---

17. Mr. Rivera states that his employer changed names numerous times, and he was unsure of the name on the date of the accident. (Dkt. 44 at Deposition p. 11).

18. STD only states that the Riveras' complaint does not allege Mr. Rivera was engaged

in a business use of a covered auto, and that the deposition testimony is insufficient to establish that fact. (Dkt. 107 at 17–18). STD does not offer any evidence disputing the facts in Mr. Rivera's testimony.

costs due to defending an action unless the defense "was initially provided under an expressed reservation of rights providing for attorney's fees and costs if the insurer prevailed." *Wendy's of N.E. Florida, Inc. v. Vandergriff,* 865 So.2d 520, 522 (Fla. 1st DCA 2003) (citing *Colony Insurance Co. v. G & E Tires & Service, Inc.,* 777 So.2d 1034, 1038 (Fla. 1st DCA 2000)). In this case, Underwriters undertook the defense of STD in state court without asserting any reservation of rights.[19] (Dkt. 103 at 11). Underwriters has not shown any reason why this Florida case should not be controlling. Therefore under Florida law, Underwriters has no legal basis for reimbursement of attorney's fees and costs expended in defending STD against the Riveras' complaint in state court.

## VI. Conclusion

The parties filed cross-motions for summary judgment seeking a declaratory judgment as to Underwriters' duty to defend and duty to indemnify STD in the state court proceeding. Underwriters' duty to defend was triggered based solely on the allegations in the Riveras' complaint. However that duty is relieved when the underlying facts show that there is no possibility for coverage under the Policy. Here, Underwriters has shown that Alberto Rivera was an insured and has demonstrated as a matter of law that the cross-liability exclusion was a "usual term" of the Policy. Thus the cross-liability exclusion applies and there is no possibility of coverage for STD against the Riveras' claims in state court. Underwriters therefore has no duty to indemnify and its duty to defend is relieved. However,

since Underwriters undertook the defense of STD in state court without a reservation of rights, it is not entitled to recover attorney's fees and costs.

It is therefore **ORDERED** that:

(1) Plaintiff's motion for summary judgment (Dkt.103) is **GRANTED**. The Court finds that Underwriters at Lloyds London does not have a duty to defend or indemnify STD Enterprises, Inc. in the action styled *Alberto Rivera and Maria Rivera v. STD Enterprises, Inc.,* case no. 01009239, filed in the Circuit Court of the Thirteenth Judicial District in and for Hillsborough County, Florida;

(2) Plaintiff's request for reimbursement of attorney's fees and costs (Dkt.103) is **DENIED**;

(3) Defendant STD's third motion for summary judgment (Dkt.106) is **DENIED**; and

(4) The Clerk is directed to enter judgment in favor of Plaintiff, close this case, and terminate all pending motions. Each party is to bear its own fees and costs incurred in this action.

19. Underwriters' sole explanation for why it did not reserve such rights is that this case "simply did not allow" for such a reservation of rights. (Dkt. 103 at 11). This is insufficient.